HARVEY *v*. RUBIN.

1. COVENANTS—DEEDS—BUILDING RESTRICTIONS — EVIDENCE — MIS-
TAKE.

Restrictions in deeds to lots in a subdivision evidencing
the grantor's intention to create a general scheme of
improvement or development of the subdivision and to
restrict it to a purely residential district may not be
set aside after the grantor's death on the testimony of a
witness that the restrictions were imposed by mere acci-
dent and that grantor failed to make statements to wit-
ness that his intentions were in accord with the re-
strictions.

2. SAME—EVIDENCE—INTENTION.

Evidence *held*, sufficient to show grantor's intention to
restrict the lots in the block in question to residential
purposes, although a few lots in the block to the north
were deeded without restrictions, and some in the block
to the south, at a street intersection, were released for
business purposes.

3. SAME—BUILDING RESTRICTIONS—RELEASE BY OWNER OF PLAT
NOT BINDING ON LOT OWNERS.

That the owner of the subdivision had released a few
lots in another block for business purposes, would not
be binding on plaintiff lot owners who had purchased
subject to said restrictions and were relying thereon, in
a suit to enjoin the erection of store buildings in violation
of said restrictions.

4. SAME—GENERAL PLAN TO RESTRICT NOT CHANGED BY OCCASIONAL
OMISSION TO RESTRICT.

That there was an occasional lot not bound by the restric-
tions, would not destroy the general plan of restrictions
in that district.

5. SAME—REASONABLENESS OF RESTRICTIONS.

Defendant's contention that the restrictions are unreason-
able because grocery and meat stores are a necessity

On construction and effect of general restrictive covenant
against the use of real property for purpose offensive or detri-
mental to the neighborhood, see note in 9 L. R. A. (N. S.) 1039.

in said block is untenable, where it appears that such stores exist only two blocks away.

6. SAME—CONSTRUCTION—WORDS AND PHRASES.

In the following restriction in a deed: "That no business houses, saloons, public schools, churches, store-houses, manufactories, apartment houses, flats or public places of any kind that may be considered a nuisance in a private residence street shall be erected on said lots," the clause "that may be considered a nuisance in a private residence street," *held*, taking into consideration the grammatical construction and punctuation, to apply only to the words, "public places."

7. SAME—LOCALITY NOT CHANGED FROM RESIDENCE TO BUSINESS DISTRICT BY CONSTRUCTION OF STREET CAR LINE.

The construction of a street car line along the street on one side of the block in which said lots are located, in the absence of testimony that changes in the locality have been wrought thereby, *held*, insufficient to justify modifying the restrictions to permit the erection of store buildings.

Appeal from Wayne; Chester (Guy M.), J., presiding. Submitted February 7, 1922. (Docket No. 146.) Decided July 20, 1922.

Bill by Olin E. Harvey and others against Harry Rubin to enjoin the violation of certain building restrictions. From a decree for plaintiffs, defendant appeals. Affirmed.

*Warren, Cady, Hill & Hamblen* (*William C. Allee*, of counsel), for plaintiffs.

*Hayes & Maurer* (*Frank W. Atkinson* and *Harry Holden MacCord*, of counsel), for defendant.

BIRD, J. The decree in this case made permanent a temporary injunction restraining defendant from erecting a block of six stores at the southwest corner of Drexel and Charlevoix avenues, in the city of Detroit. Defendant was not content with this conclusion and has appealed to this court.

It appears that the lots on the north half of block two of Jefferson and Mack avenue subdivision were sold with the following restrictions:

"And it is mutually covenanted and agreed between the parties hereto of the first and second part for themselves, their heirs, executors, administrators, successors and assigns, and such covenant is part of the consideration hereof and shall run with the land, that no business houses, saloons, public schools, churches, store-houses, manufactories, apartment houses, flats or public places of any kind that may be considered a nuisance in a private residence street shall be erected on the said lots and that as a further consideration for the sale and conveyance of the above granted premises by the parties of the first part, the parties of the second part, their heirs and assigns, shall not erect or cause to be erected on the said lots, other than a suitable private or double dwelling house with appropriate outbuildings, said dwelling house to be at least one and one-half stories high, to cost at least eighteen hundred ($1,800) dollars, and to be set back from the front line of such lot not less than 22 feet, no barns or outbuildings to be erected nearer to the front street line than 22 feet, nor shall such outbuildings so erected be used for the purpose of carrying on any business therein."

The north half of block 2 is bounded on the north by Charlevoix and on the south by Kercheval avenue, and contains about 220 lots. Defendant commenced the erection of a block of 6 stores on lots 113 and 114 on that subdivision. The plaintiffs, who are lot owners on the north half of block 2 of the subdivision, commenced these proceedings to restrain the construction of them. It was the opinion of the chancellor that the construction of the stores should be enjoined.

1. Defendant contends that there was never any general scheme of improvement or development on the part of the owner, John Curry, who imposed the restrictions, to restrict the subdivision to a strictly residential district. To support this contention defendant

shows, by the testimony of Alexander Lindsay, manager of the Curry estate, that the deeds used to convey these lots were deeds prepared to convey lots in another locality on Woodward avenue. Lindsay further testified that:

"So far as I know no statements were made by Mr. Curry, or any of his representatives, concerning any general plan of development or improvement of Jefferson and Mack avenue subdivision."

The restrictions imposed by Mr. Curry in these deeds were evidence of his intention to create a general scheme of improvement or development of the subdivision, and to restrict it to a purely residential district. Now, after he is dead, the presumption arising from his solemn act cannot be set aside on the mere testimony of another that the restrictions were imposed by mere accident and the failure of Mr. Curry to make any statements to the witness that his intentions were in accord with the restrictions.

It is further argued in this connection that a general building scheme for an entire tract is not shown where the original proprietor makes conveyances of portions of such tract subject to restrictions and portions of it without restrictions. The record shows that all of the lots in the north half of block 2 were deeded with the restrictions. The south half of the block was likewise deeded. Block 3 lying north of Charlevoix was deeded with the restrictions save in a few instances. Several of the lots at the intersection of Drexel and Kercheval were released for business purposes. These facts are very persuasive that Mr. Curry intended to restrict the territory to residential purposes only. The release of the lots at the corner of Drexel and Kercheval from the restrictions by Mr. Curry would not bind the plaintiffs if they purchased subject to the restrictions and relying thereon. *Ivarson* v. *Mulvey*, 79 Mass. 141 (60 N. E. 477). The fact that

there was an occasional lot not bound by the restrictions would not destroy the general plan of restrictions in that district.   *Frink* v. *Hughes,* 133 Mich. 63.

2. It is urged that the restrictions are unreasonable; that the subdivision is devoted to homes for working men who are employed at the automobile factories which are situate 7 or 8 blocks to the west; that in view of this grocery and meat stores are a necessity. The record shows that only two blocks to the south, at the intersection of Kercheval and Drexel, there are grocery stores, meat markets and other business places along Kercheval avenue.   Kercheval avenue appears to be more or less a business street.   It would, therefore, appear that no necessity exists for such stores at the corner of Drexel and Charlevoix.   It is not unlikely that the necessity for such places is greater in neighborhoods of this kind than in those where high grade properties have been constructed, but we think that no such necessity exists in this case as to call for an application of that doctrine.

3. It is next said that the restriction does not, in terms, prohibit the erection of stores not legally a nuisance on a private residence street.   That part of the restriction material to this question is:

"That no business houses, saloons, public schools, churches, store-houses, manufacturies, apartment houses, flats or public places of any kind that may be considered a nuisance in a private residence street shall be erected on said lots."

It is contended by defendant's counsel that the clause "that may be considered a nuisance in a private residence street" applies to all the places mentioned above, whereas plaintiffs' counsel insist that the clause applies only to the last antecedent, namely, "public places."   Taking into consideration the grammatical construction and punctuation we are rather inclined to the opinion that plaintiffs' counsel are right and

that the clause applies only to the words "public places." The question, however, is involved in some doubt, but we are satisfied from the whole record that the grantor's intention was to prohibit everything on the subdivision but a single or double dwelling.

4. Lastly it is insisted that, if the restrictions were reasonable when imposed, there has been such a change in the character of Charlevoix avenue as to make their enforcement inequitable as to stores. Counsel call attention to several violations of the restrictions on the subdivision, but especially point to the change which has been wrought in Charlevoix avenue. Recently the city of Detroit has erected on Charlevoix avenue a double track street car line. It is shown by testimony that this changes the character of the street. That with the street car line on that street private residences will not be built but that business places will be built. That this change will convert Charlevoix avenue from a residence to a business street, and it is shown that several business places have already been erected on that street since the construction of the railway.

There are few residences on Charlevoix in the vicinity of the intersection in question. The nearest business place on Charlevoix avenue is 8 or 9 blocks away. This shows that no such change has come about on Charlevoix avenue as to make property in the vicinity of Drexel worth more for business than for residence property. Nor does it appear that the locality has become unsuitable for residence property. What changes the future may bring to this locality we do not know. We must deal with it as it exists at this time. The argument that the construction of a street railway had changed the character of a certain locality was made in *Spahr* v. *Cape,* 143 Mo. App. 114 (112 S. W. 379). The court, in disposing of the contention, said in part:

"It appears that when Maplewood subdivision was laid out, the railroad did not extend to or through it, although the plat in evidence shows the road, surface road, operated by electricity, as running through it and forming a loop through the block immediately west of the block in which these lots are situated. The cars run around this loop. All that the evidence tends to show is that the property adjoining this loop, as do the lots here involved, is more valuable for business than for residence purposes. It does not convince us that it has become unsuitable for residence purposes, and so does not come within the three cases cited. The mere fact that it is more valuable or suitable for the one purpose than the other is not enough to justify a court in overturning and nullifying the solemn covenant in the deeds. Nor is it true that the mere presence of a street railway along a street turns that street from a residence into a business thoroughfare."

We are not satisfied that such changes have been wrought in the locality in question that we would be justified in modifying the restrictions. The plaintiffs made proof that their respective properties in that locality would be lessened in value if defendant was permitted to construct the stores already under way. In view of this we think the conclusion reached by the chancellor was the correct one.

The decree making the injunction permanent will be affirmed, with costs to appellees.

FELLOWS, C. J., and WIEST, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.