## WALTER F. SOWERS *v.* VESTRY OF THE ·CHURCH OF THE HOLY NATIVITY.

*Building Restrictions—Distance From Street Line—Applicability to Church.*

Restrictions as to use, contained in a deed of land sold for the purpose of residence development, *held* to be enforcible in equity as between the several purchasers of parcels of the tract, their heirs, successors, and assigns, the restrictions being for the common advantage and continuing protection of the prospective householders, and the tract having been improved by the lot holders in strict accord with, and in reliance on, such restrictions.                                    pp. 437, 438

A provision that the building line of any porch shall be forty feet back of the street line, *held* to apply to the building line of a dwelling house, whether with or without a porch, but not to an edifice devoted to religious worship.   pp. 440-442

The use of lots will not be further incumbered, and their commercial utility and value affected, by raising, through unwarranted implication, restrictions which it is the sound policy of the law to require to be plainly and unmistakably declared through the language of the document, when considered in connection with the circumstances surrounding the transaction and the object of the parties at the time of the creation of the restrictions.                                    p. 442

*Decided January 13th, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (STEIN. J.).

Bill by Walter F. Sowers against the Vestry of the Church of the Holy Nativity in the City of Baltimore. From a decree for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Paul R. Kach* and *Arthur B. Connelly,* for the appellant.

*Edward N. Rich* and *Edward H. Hammond,* with whom was *T. H. Swank* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appellant, Walter F. Sowers, filed a bill of complaint to prevent the "Vestry of the Church of the Holy Nativity in the City of Baltimore," a corporation, the appellee, from erecting a church whose building lines would be nearer to the street lines of both Garrison Avenue and Egerton Road than forty feet. A demurrer to the bill of complaint was sustained, and this appeal is taken from the decree dismissing the bill of complaint.

The appellant is the owner of a parcel of land in the angle formed by the east line of Garrison Avenue and the south side of Egerton Road, Baltimore. The appellant owned an improved adjoining lot immediately to the south of appellee's property and with a frontage on Garrison Avenue. The residence of the appellant and those of the other lot owners of the neighborhood were built forty feet back from the street lines. At the time of the institution of this litigation, the appellee was about to begin on its lot the construction of a church, whose front wall would be sixteen feet back of the street line of Garrison Avenue, with a front step extending almost to Garrison Avenue, and whose northern side wall would be twenty-eight feet from the street line of Egerton Road.

The right of the appellee to locate, within its property lines, its church, is unquestioned, save upon the single alleged ground that the appellee acquired its property subject to the restriction of not occupying with any building the portion of its lot within forty feet of the lines of either Garrison Avenue or Egerton Road. The appellee and the appellant derive their respective titles from a common source, which

created the restrictions involved, and, as the appellee had notice, the inquiry is, primarily, if the erection of a church is within the meaning of the restrictions, and, secondarily, if so, has the appellant any equity.

The decision depends upon the effect and scope of the restrictive covenants first set forth in the contract of sale, and later incorporated in the deed of John S. Gittings, trustee, to Harry E. Gilbert, dated September 14th, 1908, and duly recorded. This deed conveyed an unimproved tract of about forty-four acres, on which the purchaser was to lay out, grade, open and maintain highways, sidewalks and a sewerage system and to develop, by division and sub-division of this tract into building lots, a residential property, whose desirability and permanent attractiveness to buyers as sites for homes would be assured through a series of restrictions and conditions, embodied in the deed in the form of twenty-four consecutive paragraphs lettered from a to x, both inclusive. The deed declared, with respect to the first thirteen (a to m) restrictions, that:

"Any infraction of these conditions or failure to follow same fully will cause this sale to be null and void and vendor to be entitled to re-enter peacefully and without obstruction, vendee agreeing to withdraw in the same manner. These being conditions upon which sale is to be made to run with the land and any violation thereof may be enjoined and prohibited."

The final clause provided that

"(4) The conditions and restrictions herein contained shall be embodied in each deed to the purchaser and made a condition thereof."

The grant of the tract was

"to Harry E. Gilbert, his heirs and assigns, in fee simple, subject, however, to all the covenants, conditions and restrictions in said agreement contained and hereinbefore recited and on his part to be performed, all of which covenants, conditions and restrictions the said

Harry E. Gilbert for himself, his heirs, executors and assigns doth hereby covenant with the said John S. Gittings in his own right and as trustee, his heirs, successors and assigns and with the parties entitled in remainder subject to the life estate of the said John S. Gittings to faithfully perform, observe and comply with. And the said John S. Gittings, trustee as aforesaid, for himself, and his successors in the trust doth also hereby covenant that he will faithfully perform all the covenants in said agreement contained on his and their part to be performed."

While many of the restrictions and covenants of the deed are for the benefit and advantage of the vendor, yet the form and content of the deed make it clear that the vendor, in imposing the restrictions with respect to buildings and the use of the property to be sold for residential purposes, designed them not only for his own benefit and protection and that of his remaining land, but also for the common advantage and enjoyment of every one of the contemplated class of future purchasers of the several lots into which the tract conveyed was by agreement to be sub-divided.

Among the restrictions which were created at the inception of the development project in furtherance of a general plan, and designed to make the lots marketable, the owners secure in the common and permanent enjoyment of a purely residential neighborhood of attractive and substantial dwellings, and free from the objectionable conditions prevalent in an unregulated community, were those which prohibited all shops, stores, factories, saloons, or business houses of any kind, except one drug store; all hospitals, asylums and charitable institutions; all forms of private disposal of fecal matter or liquid waste; all cattle or swine, and nuisance or any use which might be noxious or dangerous to health, and the erection of any building until the design and plan, value and cost, and exterior color scheme had been approved. In addition, the minimum width of a lot, and the location of residences and of outbuildings, were regulated. All these

restrictions were for the common advantage and continuing protection of the prospective householders. These restrictions were the basic conditions under which every purchase and sale of a lot was made, and entered into and formed a part of the consideration for every grant of each lot into which the whole tract had been sub-divided. In addition, the bill of complaint averred, and the demurrer admitted, that the tract has been improved by the lot holders in strict accord with, and in reliance upon, the restrictive covenants of the deed mentioned. Under these circumstances, it cannot be doubted that the several purchasers of the parcels of this tract, their heirs, successors and assigns, may enforce in equity these restrictions among themselves for their own benefit in connection with the enjoyment of their respective properties. *Ringgold v. Denhardt,* 136 Md. 136, 143, 144; *Boyd v. Park Realty Corporation,* 137 Md. 36, 40, 42; *Newbold v. Peabody Heights Co.,* 70 Md. 493; *Peabody Heights Co. v. Williams,* 82 Md. 186.

The appellant is, however, entitled to no relief in equity unless he be correct in construing paragraph (b) of the deed to prevent the building of a church within forty feet of the street line of Garrison Avenue. The portion of the deed which directly relates to this subject, and which will require consideration, is without punctuation, and is of the following form:

> "The development of said property to be subject to the following restrictions (a) The lots to be not less than sixty feet in width and only one dwelling to be built on each lot (No brick houses in rows at any time to be built upon this tract) (b) Building line of porch to be forty feet back of street line (c) No out buildings to be allowed nearer street or avenue on which lot fronts than one hundred feet, nor nearer to any other street or avenue than twenty-five feet (d) No fences to be erected other than hedges (e) No dwelling on Garrison Avenue or Liberty Heights Avenue or Callaway Avenue to cost less than fifty-five hundred dollars, nor less than forty-five hundred dollars, on any other

portion of the property (f) All designs and plans for
dwellings and all other permitted buildings on lots
parcel of said property, including exterior color
schemes and values or cost of dwellings or buildings to
be erected and the character and nationality and creed
of prospective purchaser of lots or such questions of
development of this tract as may arise from time to
time are to be approved by a committee consisting of
Henry M. Gittings on the part of the vendor and the
vendee or in case of death or removal of either a suc-
cessor to be nominated by the vendor on his part or
vendee on his part and in case of disagreement a third
party shall be selected by said committee said third
party to be a competent architect and decision of
majority of committee to be final.  The expenses of
reference to be borne by the vendee (g) No shop
store factory saloon or business house of any kind
(except one drug store) No hospital asylum or insti-
tution of like or kindred nature and no charitable
institution shall be erected or maintained on the prem-
ises herein mentioned and sold, but the premises shall
be occupied and used for residential purposes only and
not otherwise.  This clause is not intended to apply to
churches (h) No stable shall be built on any lot under
seventy feet wide and not improved by a dwelling
house, except corner lots of intersecting streets  All
stables allowed hereby shall conform to the architec-
ture of dwellings or cottages on the lots on which the
said stables are to be erected."

The restrictions allow the erection of but one drug store
in the entire parcel conveyed, and of any number of churches,
but otherwise inhibit the use of any portion of the tract
except for residential purposes.  Paragraph (g).  The build-
ings which are permitted on the development are, therefore,
one drug store; residences, and their usual accompanying
outbuildings; and church edifices.  The only restriction which
is applicable to either a drug store or a church edifice is that
of paragraph (f), requiring "all designs and plans for dwell-
ings and all other permitted buildings on lots, parcel of said

property, including exterior color schemes and values or cost of dwellings or buildings to be erected" to be submitted for the approval of a prescribed committee.

If we employ the word building as a generic term to embrace anything constructed by art of different pieces connected together and fixed upon or in the soil, with the design for it to be permanently used where fixed, the only restriction as to the location of any building, except an outbuilding or stable, is found in paragraph (b), which is "Building line of porch to be forty feet back of street line." This paragraph is in association with the restrictions of paragraphs (a), (c), (d) and (e). Paragraph (d) prohibits all enclosure of the lots except by hedges, while (a), (c) and (e) embody restrictions which are clearly applicable only to residences and their outbuildings, as the terms "dwelling" and "brick houses" are unmistakably limited by their ordinary meaning, the context and the general plan of the development to that kind of a building designed to be used as a place of residence. The word "porch" in paragraph (b) does not mean an isolated, independent structure, but a part of the dwelling-house, or residences to be built not more than one on any lot of the tract, never in rows of brick, and always with the "building line of porch" forty feet back of the street line. In paragraph (a) are found general restrictions which apply to the residence as a whole and in the next succeeding paragraph the restriction, which, while general, is measured by the building line of the porch, which is that particular part of the residence that forms its exterior, projecting way, or entrance. See *Garrett v. Janes,* 65 Md. 260, 270. Compelling the building line of the porch of a residence to be withdrawn forty feet from the street line effectively prevented any obstruction of that intervening space by a porch extending from a residence whose own building line was itself set back merely forty feet. If the building line of a protruding part of a dwelling-house cannot be thrust forward nearer than forty feet to the street line, it would seem clear that the building line of the walls of the dwelling-.

house, which is the whole of which the porch is but a part, should not encroach upon the same forbidden space. The intent is made plain and evident by the meaning of the parties as collected from the four quarters of the instrument, but the language of paragraph (b) is inadequate, unless the part may be taken to represent the whole. It would seem the duty of the Court to effectuate rather than to defeat an intention which is manifest from the context, from the object sought to be accomplished, and from the result of a different construction. To give to paragraph (b) its literal and strictest meaning would make it discordant with the other provisions. It would then apply to every dwelling with a front porch, but would have no application to a dwelling with its building line however near or even coincident with the street line, provided only the house should either not have a porch or have one on the side, but not within the prohibited distance, an obvious *reductio ad absurdum.* The phrasing of paragraph (b) may indeed be said to be open to the two constructions, and so the argument of absurdity is a strong argument for the more liberal construction and the one which harmonizes with the other portions of the deed. We hold, therefore, that paragraph (b) applies to the building line of a dwelling-house, whether with or without a porch, because the parties, through the instrument itself, have made their meaning so unmistakably plain and apparent that to disregard that meaning, gathered from the four corners of the paper, would be to disregard an intention which clarifies, defines and makes sensible the language used. *Williston on Contracts,* sec. 619, *et seq.; Gwyn v. North Canal Co.* (1868), L. R., 3 Ex. 209, at p. 215.

The object of this restriction with reference to the building line of the dwelling-houses was to secure among the occupants of these dwellings equality with one another in respect to the enjoyment of the air, light and view afforded through the prescribed open space in front of every lot, not the location of a church or drug store.

This construction of paragraph (b) is in harmony with the dominant object of the restrictions, which were primarily concerned with the development of the tract for residential purposes.   The allowance of a single drug store and of churches within the precincts of the development was a minor and secondary matter.   Further, a religious edifice is fundamentally different in use and structure from a residence, and its erection within the development was not certain, but incalculable, while the construction of the dwelling-houses was in the ordinary course of the enterprise and was to begin with the grant.   Under such circumstances, failure to make the building restriction apply to edifices devoted to religious worship is not inexplicable.   However, it is not the province of this Court to supply a missing stipulation or a presumed intention, especially where the obligations of the parties have been embodied in such a solemn and considered form as a deed of indenture, whose terms, when considered in a reasonable and practical manner, do not necessarily cause to arise the implication that the parties to the indenture must have intended that the suggested restrictive covenant or stipulation should exist.   The use of the lots will not be further encumbered and their commercial utilty and value affected by raising, through unwarranted implication, restrictions, which it is the sound policy of the law to require to be plainly and unmistakably declared through the language of the document, when considered in connection with the circumstances surrounding the transaction and the object of the parties at the time of the creation of the restrictions.   *Hanilyn & Co.* v. *Wood & Co.* (1891), 2 Q. B. 488, at p. 491; *Brigg* v. *Thornton* (1904), 1 Ch. 386, at p. 395; *Saratoga Building and Land Corporation* v. *Roland Park Apartment Stables Co.*, 146 Md. 152, 158; *Meredith* v. *Danzer*, 142 Md. 573, 582; *Wood* v. *Stehrer*, 119 Md. 143, 149.

We find no error in the ruling of the learned chancellor and his decree will be affirmed.

*Decree affirmed, with costs.*