# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 11, 1927.

THE A. J. WATKINS REALTY CORPORATION, PLAINTIFF,

VS.

HYMAN BROTMAN, WIFE. AND THE GENERAL OUTDOOR ADVERTISING COMPANY, A BODY CORPORATE. DEFENDANTS.

Louis J. Burger and Frederick J. Singley for plaintiff.

Clarence A. Tucker for defendants.

STEIN, J.—

This bill was filed to obtain an injunction prohibiting the corporate defendant from erecting an advertising sign on seven lots of ground in the city on Reisterstown road, sold by the plaintiff to the defendants Brotman

and wife, who leased them to the corporate defendant, which began to erect thereon the advertising sign above named; whereupon this bill was filed because erecting such a sign was forbidden by restrictive covenants in the deed of the lots to Brotman and wife. The answers admit the existence of the covenants, but deny they forbid erecting the sign.

The case was heard on bill, answers and testimony. The testimony, mostly undisputed, shows the plaintiff, a body corporate, engaged in developing vacant lands, bought a tract of land in the city on the Reisterstown road, which, in pursuance of a general scheme, it divided into about three hundred and forty-four lots, to be sold for residential purposes: at the date of the hearing had sold about seventy-five per cent. of the lots: that in pursuance of "the above general scheme" to restrict these lots for residential purposes; the plaintiff caused restrictive covenants to be inserted in each contract and deed for lots sold and conveyed.

Brotman and his wife leased the lots sold them to the corporate defendant for a three-year term, with a three-year right of renewal, which lease contained the following clause:

"It is understood that the tenant may erect, place and maintain advertising sign structures on the premises hereby leased and post, paint or maintain advertisements on such structures."

under which authority, the corporate defendant began the erection of the advertising sign above referred to, which, when finished, in the language of its answer, "will be of the approximate height of ten feet, somewhat in 'V' form at either end thereof;" upon which, when completed, advertising signs will be placed or painted.

The testimony also shows that the contracts of sale and deed for each lot sold contained the above referred to restrictive contracts which were imposed:

"For the common advantage and enjoyment of every one of the contemplated class of future purchasers of the several lots into which the whole tract was divided, and formed part of the consideration for the grant of each lot."

These restrictive covenants in so far as material to this case, are set out in the deed to Brotman and wife, as follows, viz.:

"In fee simple subject to the following conditions, covenants and restrictions, to 'wit: 1. No *dwelling* shall be erected except upon plans and specifications first approved in writing by the party of the first part (i. e., the plaintiff) ; no *house* of the flat-roof type shall be erected; no house shall be erected on less than two lots with a combined frontage of forty feet, except that as to the lots fronting on Reisterstown road; no *house* shall be erected on less than three lots with a combined frontage of sixty (60) feet, or to project within less than twenty-five (25) feet of the street on which it fronts or less than ten (10) feet of the side lines of lots on which erected the minimum cost of any dwelling erected south of Maple street shall be twenty-five hundred ($2,500) dollars on all lots facing Holbrook avenue, Kensington avenue, Sherbrook avenue, Maple street and Villa place, the minimum cost shall be thirty-five hundred ($3,500) dollars, and on all lots facing Reisterstown road the minimum cost shall be five thousand ($5,000) dollars; no other *building than a dwelling* shall be erected except pursuant to a waiver signed by the A. J. Watkins Realty Corporation or its successors, setting forth location and construction, which waiver for *stable or garage* will not be granted *until dwelling* is completed.

2. The party of the first part reserves the right to enter upon the premises herein mentioned at any time prior to the erection of a *dwelling* thereon to cut grass, remove weeds and plant and cultivate flowers, shrubs and trees thereon, and at any time to enter along the back line thereof to install and maintain or license others to install and maintain wires and apparatus above or below the ground for electric lights or telephone or both for general use.

3. At no time shall the above described lots or any part thereof or *any building* thereon erected be sold, leased or transferred to or occupied by any negro or person of negro descent, this provision, however, not to include occupancy by servants or any employee of owner or occupant of said lot."

These covenants are inserted without punctuation or italics.

The testimony also shows that the plaintiff did not assent to the erection of the sign.

The plaintiff claims the erection of the sign is forbidden by the covenants; especially by the one that "no other *building* than a *dwelling* shall be erected except pursuant to a waiver signed by the A. J. Watkins Corporation or its successors setting forth location and construction."

In determining the meaning of the word "building" as used in these covenants, their:

"Words should receive that construction which the plain and obvious language implies; they should be taken in the sense the parties intended and what they intended is to be gathered from the whole instrument and subject matter."

The first covenant speaks (a) of a *dwelling*, the plans and specifications to be approved by the plaintiff; (b) of a *house* of the flat roof type; not to be erected on less than a varying number of lots; nor nearer than named distances from a front or side street. Contrasts *buildings with dwellings, stable and garages.* The second covenant, fixes the erection of a *dwelling* as the time for the ending of the plaintiff's right to enter on lots sold to cut grass, remove weeds, plant and cultivate. The third covenant speaks of a *house as a building* which when erected, shall not be sold, leased, transferred or occupied by any negro save in case of servants or employees. The word *building* is associated with the words dwellings, stable and garage; refers to a structure either intended for a habitation, or for the shelter of animals, and is used in its ordinary and usual meaning.

The two fundamental senses (of the word build) are to construct a dwelling and to take up one's abode and "dwell," 1 Murray's English Dictionary. p. 1161. Building is defined as that which is built, a structure, edifice, now a structure of the nature of a house built where it is to stand. Ibid, p. 1162.

In Words and Phrases, 887, etc., 1st Edition.

"*Build* is said to be derived from the word 'Bold' meaning dwelling." Building is defined to be a structure in the nature of a house built where it is to stand; as commonly understood, a house for business, residence, or public use, or for shelter of animals or storage or goods. And very generally, though not always, the idea of a habitation for the permanent use of man or an erection connected with his permanent use is implied in the word building."

In its broadest sense it can only mean an erection intended for the use or occupation as a habitation or for some purpose of trade, manufacture, or use constituting an edifice such as a house, a store, a church, or a shed. (Ibid 889).

So that the "advertising sign structure," the corporate defendant is about to erect is not a *building* within the meaning of the above covenants. To hold otherwise would further encumber the lots in question "by raising through unwarranted implication, restrictions which it is the sound policy of the law to be plainly and unmistakably declared through the language of the document, when considered in connection with the circumstances surrounding the transaction and the object of the parties at the time of the creation of the restrictions."

Sowers vs. Holy Nativity, 149 Md. 434 at 442.

I will sign a decree dismissing the bill, the plaintiff to pay costs.