OTTO SCHLICHT ET AL *v.* WILLIAM G. WENGERT
ET AL.

[No. 12, October Term, 1940.]

630

*Decided October 31st, 1490.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Sophie K. Nordenholz* and *Louis J. Jira,* for the appellants.

*Alfred F. Walker,* with whom was *Isidor Goldstrom* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

Complainants in equity appeal from a decree dismissing their bill of complaint to restrain the maintenance of a tavern, and the sale of liquors, with an incidental beer garden, on a lot of ground adjoining that on which they live, because in violation of a restrictive covenant under which that adjoining land, like their own, is held. An original bill urged as ground of relief the existence of disturbing noises and lights from the uses complained of, but, after the taking of testimony on that bill had been closed, an amended bill, asserting rights under the restrictive covenant, was filed, and additional testimony was received on that ground. The respondents denied that the disturbing conditions were unusual or severe, and contended that the covenant referred to and included in their title deeds could not be enforced at the suit of the complainants, because it was not made for their benefit, either expressly, or by inference from the fact that it was one uniformly adopted as part of a general scheme of development of the tract of land in which the lots of the parties lay. An additional contention was that, if the covenant were originally enforceable by the complainants, it was no longer so, because changes in the neighborhood, and acquiescence of the complainants in inconsistent uses, rendered it waived and obsolete.

632

The facts as the court finds them, are these: Clarence A. Tubman and Frank T. Mace purchased in 1922 a tract of land bordering on a cove of Stony Creek in Anne Arundel County and touching on its other side a county road which ran roughly parallel to the cove; and they divided it into 210 lots for dwellings, and called the whole projected settlement "Greenland Beach." A plat of the lots was filed in the Circuit Court for the county. They adopted for their sales and conveyances a printed form of deed which contained the covenant in these words: "At no time shall any part of said land be used or occupied for the manufacture, brewing, distilling or sale of spirituous or malt liquors, nor shall the lot, or any part thereof, or any building erected thereon at any time hereafter be used or occupied as a tavern, drinking saloon, bone-boiling establishment, ·tannery, slaughter house, glue, soap, candle, starch or gun-powder manufactory, or for other offensive or dangerous purposes, nor shall any signs for advertising purposes be erected or placed thereon. Also that said lot or buildings thereon shall never be rented, leased, or sold, transferred to, conveyed to, nor shall the same be occupied by any negro or colored person or person of negro blood. Also that any buildings erected on said land or any alterations made in buildings erected thereon shall be erected or made according to plans which have been approved by parties of the first part (different deeds referring to different people) and there shall be no buildings or piers of any description erected on the water's edge unless approved by the parties of the first part. No privy shall be kept or constructed on said lot. * * *"

The covenant, or so much of it as is here quoted, was embodied in all conveyances, except two, conveying four lots. The omission is not explained.

The complainants held by deed from a vendee of Mace, and by two deeds converting the ownership in the husband alone to one in himself and his wife as tenants by the entireties, through the use of an intermediary owner. The deed from Mace contained the restrictive covenant

by express reference, but the deeds to and from the intermediary did not. The court does not see, however, that the omission from the latter deeds, in Schlicht's own hands, so to speak, can be given the effect of an abandonment of his rights under the general restriction. To give it that effect would be an unreal treatment of the transaction.

Wengert and wife held their lots under three deeds; one from Tubman and Mace contained the covenant in full, and two, from vendees of Tubman and Mace, adopted it by express reference.

There was no covenant expressed in the form of deed that Tubman and Mace, or their assigns, should be similarly restricted, or that they would exact similar covenants from grantees of other lots, and the court below, citing former decisions of this court, concluded that this omission must largely influence the decision of the case.

In 1934, Schlicht and wife, after the property had been transferred to both, built a house for themselves on their lot, and improved it otherwise, at an expense of about $8000. Before that time, in 1933, the previous owner immediately on the right of them, Gerber, had sold beer on the premises for a few months and Schlicht bought beer from him. He and his wife testified that they did not approve of it, but Gerber was a friend, and they kept silent during the short time he was there. At the time the Schlicht house was built he was no longer there. In 1936, Wengert opened a tavern on the lots further to the right, and maintained it for a year and a half. Schlicht and his wife, with fifteen other lot owners, complained to the Liquor License Board of the county, and Schlicht consulted an attorney, but no further action was taken before the tavern closed. Three hundred feet to the right Arthur Rinehart has been conducting a tavern and grocery store since 1932, and Schlicht was one of ten persons who signed Rinehart's application for a license, vouching for his character. There are now three other taverns or saloons at greater distances.

In May of 1938, Wengert opened the saloon or tavern now complained of, and Schlicht again opposed it. He told Wengert he did not object so much to a saloon, but he did object to the noise. The gathering of noisy people under his windows and the lights maintained until morning hours were annoying to him. Schlicht's wife objected to the saloon. There were, as the proof shows, occasional disturbances by noise and bad language, especially on week ends, in addition to the lights. A policeman was called once. Some of the disturbing noises came from boats on the water in the rear. Across the cove, on land not included in this development, there is a saloon. The evidence shows that wharves have been built from lots here and there on the tract in disregard of the prohibition in the covenant. Display lights such as those objected to are shown to be used elsewhere about the tract, but none of them close to the Schlicht lot.

The principles controlling decisions in cases such as this have been fully expounded in opinions recently filed, and they need only be stated again for application here. *Levy v. Dundalk Co.,* 177 Md. 636, 11 A. 2nd 476. In the absence of any expression in the conveyances that the restricting covenant was intended to enure to the benefit of vendees of other lots and sub-vendees of the developers, so as to be enforceable by them, it is incumbent upon a party seeking enforcement to show an unexpressed intention by inference from the nature of the plan and development, and the purpose of the restriction, or, in other words, from the circumstances. It would be incorrect to say that the absence of an expression of the intention is decisive. And it would be incorrect to say that any ground of valid inference must be disregarded. An inference which appears with sufficient clearness from any source should be accepted. To this one reservation should be made, however. It may be questioned whether present testimony by one of the developers as to his meaning and purpose in inserting the covenant in the conveyances is receivable in evidence to support or defeat the contentions of purchasers of lots. *Jones v.*

*Syer,* 52 Md. 211; *Harvey v. Rubin,* 219 Mich. 307, 189 N. W. 17. Mace testified that a uniform plan was adopted for the benefit of all purchasers, but it was left to the vendees of lots to enforce or not to enforce the covenant in the future; and there was no objection to the testimony. The question of its admissibility is not now decided. Code, art. 5, sec. 40.

If the restrictive covenant appears to have been adopted for the uniform development of the tract, as part of a general scheme, the unexpressed intention may be evident, and the covenant may be enforced at the suit of a neighboring owner aggrieved by its breach. *McKenrick v. Savings Bank,* 174 Md. 118, 128, 197 A. 580, 584. "If in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity." But although the covenant was originally enforceable, equity might still refuse enforcement if there has been such a change in the neighborhood that the covenant is unsuited to its present character. And again, equity may under some circumstances refuse enforcement when there has been acquiescence by the complaining neighbor. *Levy v. Dundalk Co., supra; McKenrick v. Savings Bank, supra; Clem v. Valentine,* 155 Md. 19, 141 A. 710; *Sowers v. Holy Nativity Church,* 149 Md. 434, 131 A. 785; *Bealmear v. Tippett,* 145 Md. 568, 125 A. 806; *Wood v. Stehrer,* 119 Md. 143, 86 A. 128; *Summers v. Beeler,* 90 Md. 474, 475, 45 A. 19; *Tiffany, Real Property,* (3rd Ed.) secs. 858, 862, 865, 867 and 868.

On the main question, whether the covenant in the Wengert deed was intended for the benefit of other vendees in the tract, the conclusion of this court has differed from that of the court below. One large tract was being developed by division into lots for sale, a printed, uniform, deed was prepared and used for all, with the two exceptions mentioned, and the covenant on its face seems to evidence a design to give a character to the whole

neighborhood, that is, to secure a residential neighborhood, free from occupations and structures which might disturb that character, "at any time hereafter." A uniform, general, scheme of development and use was adopted, and the benefit and advantages of the covenant seem plainly intended for buyers of other lots; after all the lots were sold, as the plan intended, it could benefit only the buyers and their assigns. Many residences have been built, and there is testimony that the complainants, at least, built in reliance on the assurance as to the character of the place. The restrictive covenant considered in the case of *Sowers v. Holy Nativity Church, supra,* was closely similar, and was found enforceable by a neighboring owner complaining of a violation. "Under these circumstances," said the court, "it cannot be doubted that the several purchasers of the parcels of this tract, their heirs, successors, and assigns, may enforce in equity these restrictions among themselves for their own benefit in connection with the enjoyment of their respective properties." *Sowers v. Holy Nativity Church,* 149 Md. 434, 438, 131 A. 785, 786. And see *Tiffany, Real Property,* (3rd Ed.) sec. 865.

The absence of the covenant in two of the deeds from Tubman and Mace seems by no means sufficient to contradict the inference of a uniform, general, scheme. They are exceptional instances, too few to influence the character of the whole. They "simply [take] those lots out of the general scheme." *Leader v. La Flamme,* 111 Me. 242, 88 A. 859, 860; *Harvey v. Rubin,* 219 Mich. 307, 189 N. W. 17; *Bacon v. Sandberg,* 179 Mass. 396, 398, 60 N. E. 936; *Knight v. Simmonds,* [1896] 2 Ch. 294, 299; *German v. Chapman,* 7 Ch. D. 271.

Such acquiescence by Schlicht and wife as appears from the evidence in no way induced action by Wengert and wife, so that an estoppel might prevent the assertion of rights under the covenant now. And toleration of violations, out of friendship or lack of inclination until incidental annoyances grew to make the Schlicht's feel a grievance, could not be construed as surrender of those

rights. They refrained from a contest until experience with the particular violation stirred them to enforcement; and they might do so without loss of rights from it. *Bacon v. Sandberg*, 179 Mass. 396, 399, 60 N. E. 936; *Bealmear v. James*, 147 Md. 274, 277, 128 A. 40. The endorsement of Rinehart's character, to aid him in securing a license for the sale of liquors, however it might prevent objection to the selling so licensed, would not work an estoppel against the enforcement of the covenant of the Wengerts. Whether it would indicate an abandonment of the restriction generally is another question. But without an estoppel, or without an acceptance of a change of the nature of the neighborhood, there would be no ground for denying the complainants the rights asserted.

From all that appears the neighborhood, notwithstanding the four saloons spoken of, is still a residential one. There seems to have been no such loss of character as would render a covenant excluding saloons unsuited. The saloons not in controversy now may have some valid defenses to any suits to enjoin their maintenance; the court cannot say as to that. But no ground is found for a holding that the neighborhood has become one in which a saloon next to the complainants, once prohibited by the covenant, is now appropriate, and no longer prohibited.

The complainant's case for enforcement of the covenant has therefore been well founded. The separate objections to nuisances, so called, need not be considered further.

*Decree reversed, and cause remanded for passage of a decree in accordance with this opinion, with costs.*