MARGARETTA M. K. MAGANINI ET AL. v.
JACQUELINE D. HODGSON

SUPERIOR COURT         FAIRFIELD COUNTY         FILE NO. 81233

Memorandum filed July 13, 1950.

*Hirschberg, Pettengill, Strong & Deming,* of Greenwich, for the Plaintiffs.

*Cressy, Bartram, Melvin & Sherwood,* of Stamford, for the Defendant.

COMLEY, J.  The plaintiff Maganini, as the owner of lot 2, has no standing to enforce the restrictions contained in the original deed to lot 6.  Lot 2 was first conveyed to Ostrander and Terry on September 22, 1913.  Lot 6 was conveyed to Rocky Crest Realty Company on July 12, 1915.  The restrictions contained in the two deeds are radically different.  Those in the later deed are more stringent.  A comparison of the two sets of restrictions does not give rise to the implication that they were made as parts of a uniform building scheme.  The situation as between these two parties comes within the rule announced in *Mellitz* v. *Sunfield Co.,* 103 Conn. 177, 182, where it is said: "The right of the plaintiff as a prior purchaser to the defendant from the original owner to enforce the restrictions in the deed from the original owner of this tract does not give him the right

to enforce other and different restrictions contained in a subsequent deed of any of the lots of the tract. There is no privity between the prior and subsequent purchaser."

It is true that when the original deed to the Maganini piece was given there was already on file the development map dated July 26, 1913. But the mere existence on the records of a development map does not raise any implied covenants relating to the size or use of the lots shown thereon. *Hickson* v. *Noroton Manor, Inc.,* 118 Conn. 180, 188.

The plaintiffs, E. Coyne Maloney and Genevieve Kenny Maloney, stand in a different position. They are the owners of lot 5, which was originally conveyed by the developer on July 29, 1915. The restrictions contained in that deed are substantially similar to those affecting the defendant's land. They are also substantially similar to those affecting seven of the eight lots in the development, the exception being the Maganini property. It is true that lot 7, originally conveyed on March 3, 1914, was originally restricted in the same manner as the Maganini lot but, later, the developer took the lot back, and, on February 2, 1917, when it was resold, the restrictions were revised so that they were substantially similar to those affecting all the lots except lot 2.

It thus appears that when the Maganini property was sold there was no uniform development plan in existence or even in contemplation. But, later, as lots 8, 6, 5, 3, 4, 1 and 7 were sold in that order, a general plan of development came into existence. The outstanding feature of this plan was that the development should always be a highclass residential area with no more than one dwelling house on each lot. This gave to each owner, except Maganini, the right to enforce the restrictions created for their mutual benefit. The rule is stated in *Hooker* v. *Alexander,* 129 Conn. 433, 436, to be: "When, under a general development scheme, the owner of property divides it into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee."

The defendant claims that this rule does not apply because the restrictions are not identical in form. This is not required. It is to be noted that in the quotation from the *Hooker* case, supra, the language used is "substantially uniform." In *Sargent* v. *Leonardi,* 223 Mass. 556, 557, it is stated that "a general scheme may be found to exist even if certain lots are sold without restrictions or if the restrictions imposed are not identical." See also *Carey* v. *Lauhoff,* 301 Mich. 168, and *Schlicht* v. *Wengert,* 178 Md. 629.

The Maloneys are, therefore, entitled to equitable relief unless, as the defendant claims, they are guilty of laches or do not come into court with clean hands.

First, as to laches. It appears that the defendant made an application to the zoning board of appeals for a variance to permit her to proceed with her plans. A hearing upon this application was held on December 5, 1949. Mr. Maloney appeared at this hearing and opposed the application. The application was granted on December 8, 1949, but Maloney had no actual knowledge of this. Morford Downs, the defendant's contractor, commenced work on the building on December 27, 1949. Maloney did not notice that work was going forward until the early part of January, 1950. At that time neither he nor the defendant had actual knowledge of the restrictions and of their respective rights and duties thereunder. On or about January 15, 1950, he consulted his attorney who on January 25, 1950, wrote to the defendant's lawyer setting forth the plaintiff's claims. The papers in the present action were served upon the defendant on February 2, 1950. The defendant points out several respects in which the plaintiffs might have been more vigilant and alert in ascertaining and protecting their legal rights. Equity, however, does not require absolute efficiency of a plaintiff and, in view of all the circumstances it does not appear that the plaintiffs were guilty of such unreasonable delay as to constitute laches.

Second, as to the doctrine of unclean hands. The Maloneys bought their property in 1947. The garage building thereon contained living quarters which were originally intended for the occupancy of servants. For a number of years prior to 1947 the plaintiffs' predecessor in title had leased these quarters to tenants. On December 1, 1947, the Maloneys leased them to a tenant named Smith and on the expiration of that lease on December 1, 1949, they were again leased for two years to tenants named Campagna. No change was made in the exterior of the garage building to accommodate these tenants and their occupancy did not differ substantially from occupancy by servants except that rent was charged.

The following quotation from 3 Tiffany, Real Property (3d Ed.) § 873, and cases there cited is a sufficient answer to the defendant's claim: "One cannot obtain relief in equity against the violation of a restrictive agreement entered into in pursuance of a general plan if he himself is guilty of a substantial breach

of the same restriction. . . . But the fact that the complainant has himself committed a minor breach of the agreement will not disentitle him to an injunction against a breach by another of considerable magnitude. Nor will his own violation of one restriction estop him to compel the observance of another restriction beneficial to his property."

Judgment is, therefore, rendered in favor of the plaintiffs Maloney against the defendant granting an injunction in accordance with paragraph one of the prayers for relief; and judgment is rendered for the defendant as against the plaintiff Maganini; no costs to be taxed in favor of any party.