OAK LANE CORPORATION *v.* DUKE ET UX.

[No. 14, October Term, 1950 (Adv.).]

138

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON and HENDERSON, JJ.

*M. Richard Moss* for the appellant.

*George Sempeles* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

Appellees filed a bill of complaint in the Circuit Court of Baltimore City against the appellant to compel specific performance of a contract of sale in which the appellant was the purchaser. The lots sold were numbers 19, 26, 27, 29, 30 and 31, (all on Oakford Avenue) and numbers 159 and 160 (on Coldspring Lane), in Park Manor, in Baltimore City. Specific performance was resisted. on the ground that there are certain restrictions upon the lots and that the tax sales of certain of them were defective. The Chancellor decreed in favor of complainants, whereupon appellant came here.

The lots are a part of a large tract subdivided as Park Manor. It was owned by the Park Manor Realty Company, and in each deed conveyed by that Company to their grantees there were included restrictions against the use of land for the manufacturing, brewing or sale of spirituous or malt liquor, or as a tavern or drinking saloon, bone boiling establishment, tannery, slaughter

house, glue, soap, starch or gun powder manufacturing, or for other offensive or dangerous purposes, or for the keeping of pigs, or other animals of like offensive character. The building lines were to be fifteen feet back from the street, and no part of any building was to be erected less than ten feet from the building line. No out-buildings were to be erected nearer to the main road than seventy-five feet. No house costing less than $1,500 to $2,500, should be erected on a lot, and only one house on a fifty-foot frontage. None of the deeds contains any statement that similar restrictions bind the lots retained, or subsequently to be sold by the Park Manor Company.

The appellant desires to construct apartment units and contends that it cannot do this because of these restrictions, particularly those with respect to the building lines and the construction of only one house to a fifty-foot frontage.

Where restrictions are imposed upon property sold for the benefit of the property retained, and upon the property retained for the benefit of the property sold, or upon both for the benefit of both, such restrictions are held to constitute a uniform general scheme or plan of development, to run with the land, and to be valid and enforceable. *McKendrick v. Savings Bank*, 174 Md. 118, 197 A. 580. Such restrictions may be shown otherwise than by the deeds, if there is clear and satisfactory proof that the common grantor intended that they should affect the land retained. This is a question of fact which may be considered from all the evidence produced in the case. Any doubt should be resolved in favor of the unrestricted use of the property. *Scholtes v. McColgan*, 184 Md. 480, 41 A. 2d 479.

There is nothing in the case before us which indicates any common scheme, except the restrictions in the deeds of the lots sold. The Park Manor Realty Company did not obligate itself to convey all of the lots in the plat with these restrictions on them when it acquired the property in 1907, and subdivided it, and started to sell lots. In the nearly 50 years that have since elapsed,

there have been a number of violations of these restrictions by subsequent owners of the lots. The Telephone Company has built a building embracing four lots, and residential row houses have been built. These constructions were contrary to the provision that only one house should be erected on a fifty-foot frontage. Of course, a few instances may merely indicate toleration rather than a surrender or abandonment of rights. *Schlicht v. Wengert,* 178 Md. 629, 15 A. 2d 911. However, in view of the unilateral nature of the restrictions, and the subsequent disregard of them by later purchasers without any objection from other lot owners, we conclude that restrictions as originally placed upon the property, and as practically construed, were personal covenants, did not run with the land, and, therefore, are no longer binding upon the lots with which we are here concerned. *Ringgold v. Denhardt,* 136 Md. 136, 146, 110 A. 321.

All of the lots which the appellant is buying contain tax sales in their chains of title. They were sold by the City Collector of Baltimore for taxes at various times, running from 1922 to 1936. The reports of sale were, in each case, made in the following year. Various questions are raised about these tax sales, such as lack of proper notice, erroneous descriptions, failure to levy or distrain on the property, and failure to ratify the sales until after the expiration of a year and a day from the date of the sale. We have examined the record, and are unable to find anything fatal in any of these objections, except as to Lot 31. That is an unimproved city lot, the sale of which was ratified in 1924, and a deed given by the Collector to the Mayor and City Council of Baltimore in March of that year. The description in the advertisement of sale and in that deed are clearly erroneous, because, while the point of beginning is on the division line between Lot 31 and Lot 30, the detailed description is the description of Lot 30 instead of Lot 31. That error was corrected by a deed from the City Treasurer to the Mayor and City Council on March 29,

1950, and a confirmatory deed from the Mayor and City Council to the complainant, Albert Duke, on April 5, 1950, but it cannot be held that these deeds make the original sale and conveyances valid. It was, however, admitted by appellant's counsel, in open court, that Lot 31, subsequent to its sale to the City, was listed on the tax rolls in the name of the Mayor and City Council of Baltimore, and that the City exercised over it acts of dominion and ownership such as is customary over any vacant lot. It had the weeds and brush cut down periodically over a period of 25 years. Since this is admitted to be a fact, we conclude that the City has acquired a title to the property by adverse possession, which it could convey, and that its conveyance to the appellees and its confirmatory deed correcting the description, give the appellees a merchantable title to this property.

It appears to us, therefore, that on the face of the record, the appellees are able to convey a good and merchantable title to all of the lots mentioned in the contract which is sought to be specifically enforced. The Chancellor was, therefore, correct in decreeing enforcement, and his decree will be affirmed.

*Decree affirmed with costs.*