HARTZ *v.* KALES REALTY CO.

1. DEEDS—BUILDING RESTRICTIONS—EQUITY.
   Where the owner of a subdivision on which building restrictions had been created, conveyed a ten-foot strip to an adjoining proprietor and in the deed, as part of the consideration, it was provided that no buildings except dwellings should be erected on the adjacent parcel owned by the grantee, although the grantee never signed the deed of conveyance, his acceptance of the grant bound him, in equity, to observe the restrictive covenants.

2. SAME—FRAUDS, STATUTE OF—ESTOPPEL.
   The purchasers of lands which were subject to building restrictions, known to them at the time of purchase, having notice, also, that the grantor had observed the conditions, were estopped to invoke the statute of frauds as a ground for evading the restrictions.

3. SAME—PARTIES—EQUITY.

> Subsequent holders of title to other property within the
> restricted district were proper parties to a bill of com-
> plaint, to enjoin the owner of premises brought within the
> restrictions by special agreement with a mutual grantor,
> from erecting a garage in violation of the terms of the
> agreement.[1]

Appeal from Wayne; Mandell, J. Submitted January 31, 1913. (Docket No. 33.) Decided March 26, 1914.

Bill by Gertrude B. Hartz and others against the Kales Realty Company for an injunction. From a decree for complainants, denying a part of the relief desired, both parties appeal. Modified and affirmed.

*Stevenson, Carpenter & Butzel,* for complainants.

*Luman W. Goodenough* and *Irvin Long,* for defendant.

BIRD, J. The several complainants herein, who are owners of property on Woodward Avenue Terrace subdivision, have joined in filing the bill in this case, to restrain the defendant from erecting a garage on a portion of lot 20 included in that subdivision. In 1887 this subdivision was owned by Robert Stead. In July, 1887, Stead conveyed to Reynolds what is now known as the south 72 feet of said lot 20. Later, and in July, 1891, Stead contracted to convey to Laura B. Van Leuven all the land on said subdivision, less what he had sold to Reynolds in 1887. This contract contained a building restriction in the following form:

"The parties of the second part further agree that said property shall not be used by them or sold to purchasers for any other than residence purposes; that

---

[1] The question who may enforce restrictive covenant or agreement as to use of property is treated in a note in 37 L. R. A. (N. S.) 12.

178 MICH.—36.

is to say, for houses and for residences and appropriate out buildings."

In November, 1891, Laura B. Van Leuven and Stead executed a plat of the Woodward Avenue Terrace subdivision, and the same was duly recorded in May, 1892. Reynolds did not join in this plat. While the ownerships in the Terrace stood in this wise, and in October, 1893, Stead, Van Leuven, and Reynolds executed a plat of the addition to Woodward Avenue Terrace subdivision, which included the whole of lot 20, and two additional lots which were numbered 21 and 22. Subsequently, and in January, 1894, Laura B. Van Leuven conveyed the north 10 feet of lot 20 to Stead, and Stead in turn conveyed it to Reynolds, thereby making Reynolds the owner of the entire lot 20. The consideration stated was "the sum of $1,000 and the agreement regarding building line and occupancy hereinafter recited." Following the description, a building restriction was inserted, which provided:

"The agreement and part consideration above mentioned is that no building shall be placed nearer than 15 feet to the lot line of the addition to the Woodward Avenue Terrace subdivision, and no building shall be erected on said lot for other than dwelling purposes. This agreement to be binding upon the heirs and assigns of said William F. Reynolds."

The defendant now owns lot 20, which was formerly owned by Reynolds, also lots 21 and 22 contained in the addition to the Woodward Avenue Terrace subdivision. He began the construction on a part of said lot 20 of an automobile garage, intending to use the 10 feet on the north, which his grantor, Reynolds, last purchased from Stead, for a driveway in getting to and from the garage.

It is claimed upon the part of the complainants, who have observed the building restrictions upon their own lots, that lot 20 is subject to the same building

restrictions, and consequently they have asked the court to restrain the construction of the garage; it not being a dwelling or an outbuilding. The contention of the defendant is that the building restrictions which apply to the Woodward Avenue Terrace subdivision do not and never have applied to lot 20; that it was never included within the general scheme of that subdivision, because it was sold to Reynolds several years before that subdivision was created. The chancellor was of the opinion that complainants were not entitled equitably to have the restriction enforced as to the south 72 feet of lot 20, but that they were entitled to relief as to the north 10 feet thereof because that part of the lot was within the restricted district when they purchased their property. While the south 72 feet of lot 20 was not originally included within the district which was subject to the building restrictions, we think it was subsequently brought within that district by the conveyance by Stead to Reynolds of the north 10 feet of lot 20, in January, 1894. Stead and Van Leuven owned and promoted the subdivision. They were desirous of having all the property in that subdivision subject to the building restrictions. At the time of the conveyance they were both interested in certain property in the subdivision, and were interested in its success. Reynolds was desirous of adding the north 10 feet to the remainder of the lot which he owned. The 10 feet which he was desirous of acquiring was subject to the restrictions. They did not, however, apply to the 72 feet. As a condition, and as a part of the consideration for the conveyance expressed in the deed, it was provided that the south 72 feet should also be brought within the zone of the building restrictions. The deed thereto, with these considerations expressed therein, was accepted by defendant's grantor and the restrictions have been observed during the intervening years. It is true the deed was not signed by Reynolds, but he

accepted it on condition that the restrictions should be in force against the south 72 feet, and he accepted the benefits accruing from the restricted zone. The agreement was binding upon Reynolds, and it would have been contrary to equity and fair dealing for him to have violated the agreement under which he acquired a portion of the lot.

But it is argued that, while it might have been binding upon Reynolds, it was a collateral covenant and is not binding upon Reynolds' grantees. The defendant had notice of the agreement under which its grantor, Reynolds, acquired the title thereto. It further had notice that the agreement had been kept by its grantor and partially performed. It was further informed by the deed that the agreement was binding upon the heirs and assigns of Reynolds, and we think that defendant should now be estopped from invoking the statute of frauds to enable it to do what it knew, before it purchased, its grantor promised he would not do. 2 Pomeroy's Equity Jurisprudence, § 689.

This agreement, by which the south 72 feet of this lot was brought within the zone of the building restrictions, was made for the benefit of the property owners of the Woodward Avenue Terrace subdivision. It was made in the interest of the common grantor and in the interest of those who might own property upon that subdivision. It being shown that these complainants are so interested, we think they are proper parties to raise this question. 3 Pomeroy's Equity Jurisprudence, § 1295.

The decree of the trial court will be modified in accordance herewith, and affirmed. Complainants will recover their costs in this court.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., did not sit.