### SIGNAIGO v. BEGUN.

1. COVENANTS — BUILDING RESTRICTIONS — ENCROACHMENTS — ESTOPPEL.

In a suit to enjoin the violation of building restrictions by the erection of an apartment house with stores on the ground floor in a district restricted to single dwellings, plaintiffs were not estopped by slight encroachments of their own houses upon the building line, amounting at most to a few inches, from protesting against the erection of such apartment house.[1]

2. SAME—ERECTION OF APARTMENT WITH STORES PROPERLY ENJOINED.

In such suit, evidence that nearly all of the lots in the subdivision were occupied by single dwellings showing a common plan from the beginning to make such subdivision

---

[1]Deeds, 18 C. J. §§ 452, 452 (Anno).
Multiple residence structures as violation of restrictive covenants, see note in 45 L. R. A. (N. S.) 737.

a high class residential district, of which defendant had notice, *held,* to warrant a decree restraining the erection of an apartment house with stores.[2]

**3. SAME—LACHES—INJUNCTION.**

Where defendant had notice of the restrictions before purchasing the lot, received prompt protests from interested parties on beginning the work, and the bill to enjoin same was filed before it had progressed very far after attempts to adjust matters failed, there was no such laches as to defeat plaintiffs' right to relief.[3]

**4. SAME—PROPERTY RIGHTS—EQUITY.**

The right, when acquired, to live in a restricted residential district is a property right, in the nature of an easement, which it is the province of a court of equity to protect.[4]

Cross-appeals from Wayne; Dingeman (Harry J.), J.    Submitted January 6, 1926.    (Docket No. 20.) Decided March 20, 1926.

Bill by Francis E. Signaigo and others against Alex Begun to restrain the violation of building restrictions. From a decree granting plaintiffs partial relief, both parties appeal.    Reversed, and decree entered for plaintiffs.

*Maurice Sugar,* for plaintiffs.

*William Henry Gallagher,* for defendant.

Plaintiffs, 19 in number, owners of lots on Hill avenue in Hamilton Park subdivision in Highland Park, seek by this bill to restrain defendant from erecting an apartment building with stores on one of the six remaining unoccupied lots on that street, the remaining 74 lots on the street being occupied by single dwellings worth from $10,000 up, and the street being up to this time a high grade residential one.    The subdivision of which these lots form a part

---

[2]Deeds, 18 C. J. §§ 449, 459, 463; [3]Id., 18 C. J. § 466; [4]Id., 18 C. J. §§ 449, 463.

was originally put on the market by the Michelson Land & Home Company about 1912. The form of contract originally used by the company contained some general and indefinite restrictions; later a form was used with more definite restrictions. Deeds to 61 lots contain the following restrictions:

"No building shall be erected upon the premises above described within fifteen feet of the front lot line. No manufacturing, liquor, or other business shall be conducted upon said premises; nor shall any dwelling costing less than fifteen hundred ($1,500) dollars be erected thereon. Said premises are conveyed upon the express condition that they shall not be occupied by a colored person or persons."

Deeds to 18 of the lots contain the following restrictions:

"No building shall be erected upon the premises above described within fifteen feet of the front lot line. No manufacturing or liquor business shall be conducted upon said premises; nor shall any dwelling costing less than fifteen hundred ($1,500) dollars be erected thereon. Said premises are conveyed upon the express condition that they shall not be occupied by a colored person or persons."

The remaining lot, the one here involved, contains the following restrictions:

"It is mutually agreed that no building shall be erected on this property within fifteen feet of the front line, and no liquor business shall be conducted on the premises; nor shall the property be sold to or occupied by a colored person. It is mutually agreed that no building shall be erected on this property costing less than fifteen hundred ($1,500) dollars except that of a temporary building, which shall be placed at least thirty feet from the front lot line."

It should be stated that the deed to this lot was not executed until June 25, 1924, and that the contract for its purchase was not entered into by defendant's predecessor in title until after the sale of many of the

other lots on the street.  From a decree granting plaintiffs partial relief, both parties appeal.

FELLOWS, J. (*after stating the facts*).  Upon 74 of the 80 lots single dwellings have been erected of substantial character.  Some of these are not exactly on the building line; some are back of it, and some are in front; there are some of the second stories which also project slightly beyond the building line; but these slight encroachments measuring at most a few inches, and in one case but .24 of an inch, are too inconsequential to merit discussion.  The plaintiffs are not estopped by them from protesting against the erection in their neighborhood of an apartment house with 19 apartments and having stores on the ground floor.

There is some force in plaintiffs' contention that the word "building," found in 79 of the deeds, is somewhat modified and restricted by the later use of the term "dwelling" in the restrictions.  *DeGalan* v. *Barak*, 223 Mich. 378; *Killian* v. *Goodman*, 229 Mich. 393; *Schadt* v. *Brill*, 173 Mich. 647 (45 L. R. A. [N. S.] 726).  But we shall not dispose of the case on this question, as we are convinced upon this record that there was a common plan from the inception down to the present time carried out by every one of the owners of the 74 occupied lots for a high class residential district of single dwellings and that defendant had notice thereof.

Mr. Michelson of the Michigan Land & Home Company was deceased at the time of the hearing of this case.  Defendant, however, called as a witness in his behalf the former bookkeeper of the company who gave some testimony thought to be favorable to the defendant.  But upon cross-examination he admitted that:

"It was originally intended to restrict the subdivision

to residence purposes and dwellings, other than Hamilton.    The agents were instructed to tell purchasers that the property was restricted that way."

And all of the home owners who testified on the subject, and there were a number of them, gave testimony tending to show that they were induced to purchase lots and to erect their homes on the understanding that the street was a residential street of single dwellings and that everything else was tabooed.    The oral testimony fortified by numerous photographs presents a situation that could scarcely be overlooked by a most casual observer, and in addition to this there is positive testimony that defendant was informed before he purchased the lot that the street was restricted to "single residences only."    This testimony was corroborated but was disputed by defendant.    But defendant's testimony on the whole was quite unsatisfactory and we are persuaded that upon this disputed question of fact we should find with the plaintiffs.

The recent case of *Sanborn* v. *McLean*, 233 Mich. 227, will be found illuminating on many of the questions here involved.

There has been no such laches on the part of the plaintiffs as to defeat their right to relief.    Not only was defendant given actual notice before he purchased, but he and his contractor promptly received protests from interested parties on beginning the work. Attempts to adjust matters failed and the bill was filed before the work had progressed very far.

The right, if it has been acquired, to live in a district uninvaded by stores, garages, business and apartment houses is a valuable right.    In *Allen* v. *City of Detroit*, 167 Mich. 464 (36 L. R. A. [N. S.] 890), it was said:

"Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process

of law and compensation therefor; the validity of such restriction not being affected by the character of the parties in interest."

It is the province of a court of equity to protect the individual in this as in other property rights. See *Harris* v. *Roraback,* 137 Mich. 292 (109 Am. St. Rep. 681) ; *Misch* v. *Lehman,* 178 Mich. 225; *Hartz* v. *Kales Realty Co.,* 178 Mich. 560; *Stewart* v. *Stark,* 181 Mich. 408; *Kingston* v. *Busch,* 176 Mich. 566; *Harvey* v. *Rubin,* 219 Mich. 307; *Swan* v. *Mitshkun,* 207 Mich. 70; *Kelman* v. *Singer,* 222 Mich. 454; *McQuade* v. *Wilcox,* 215 Mich. 302 (16 A. L. R. 997) ; *McNair* v. *Raymond,* 215 Mich. 632; *Harley* v. *Zack,* 217 Mich. 549; *Oliver* v. *Williams,* 221 Mich. 471; *Nechman* v. *Ross,* 225 Mich. 112; *Davison* v. *Taylor,* 196 Mich. 605; *Rosenzweig* v. *Rose,* 201 Mich. 681; *Farley* v. *Finn,* 226 Mich. 205; *Moreton* v. *Louis G. Palmer & Co.,* 230 Mich. 409; *Putnam* v. *Ernst,* 232 Mich. 682; *Marrick* v. *Furnari,* 233 Mich. 146. An examination of these cases will disclose that this court has not hesitated in proper cases to restrain by injunction the invasion of these valuable property rights. It will not hesitate so to do in the instant case, nor in the future.

The decree appealed from will be set aside and one here entered in conformity with the prayer of the bill. Plaintiffs will recover costs of both courts.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.