BUNCE *v.* JONES.

1. COVENANTS — BUILDING RESTRICTIONS — CONSTRUCTION—WHERE AMBIGUOUS, SURROUNDING CIRCUMSTANCES WILL BE CONSIDERED.
   Where a reading of the entire context of a restriction in deeds to lots in a subdivision leaves doubt as to whether the use of the property is limited to buildings for single families, the court will look to the situation and surrounding circumstances and endeavor to ascertain the purpose of the platter in imposing the restriction.

2. SAME—USE LIMITED TO ONE-FAMILY BUILDINGS.
   Restrictions in deeds to lots in a subdivision, *held*, to limit the use thereof to one-family buildings.

¹Deeds, 18 C. J. §§ 450, 452; 14 R. C. L. 397; 3 R. C. L. Supp. 226; 4 R. C. L. Supp. 902; ²Id., 18 C. J. § 450.

238—Mich.—22.

3. SAME—TWO-FAMILY "INCOME BUNGALOW" PROHIBITED.
    An "income bungalow," which is conceded to be a story
    and a half two-family dwelling, is prohibited by a re-
    striction limiting the use of the lots to one-family build-
    ings two stories in height or "an approved type of bunga-
    low."

4. EQUITY—INJUNCTION—LACHES—BUILDING RESTRICTIONS.
    Where plaintiffs began suit to enjoin the erection of an
    "income bungalow" within three days from the time they
    discovered that it was designed for two families, in viola-
    tion of restriction limiting use of the lot to a one-family
    building, it cannot be said that they were guilty of laches
    barring their right to maintain the suit.

Appeal from Wayne; Merriam (DeWitt H.), J.
Submitted January 11, 1927. (Docket No. 59.) De-
cided April 1, 1927. Rehearing denied June 6, 1927.

Bill by Chauncey B. Bunce and others against
Lawrence Jones and others to enjoin the violation of
building restrictions. From a decree for plaintiffs,
defendants appeal. Affirmed.

*Cline & Dwyer,* for plaintiffs.

*Harold F. Coyle,* for defendants.

MCDONALD, J. The purpose of this suit is to en-
join the defendants from erecting a certain residence
building upon lot 525 of the Glendale Courts sub-
division, in the city of Detroit, Michigan, in violation
of the following restrictions:

"No structure shall be built upon any lot in said
subdivision except for dwelling house purposes only,
having at least two (2) stories in height and appur-
tenant outbuildings, or an approved type of bungalow,
and for a period of five years from the date hereof,
no building shall be built upon said subdivision until
plans and front elevation thereof shall have first been

---

³Deeds, 18 C. J. § 452; ⁴Id., 18 C. J. § 466.

submitted to and approved by Clemens, Knight, Menard Company, selling agents. * * *

"On all lots in said subdivision fronting on Birwood boulevard, * * * no building shall be erected except a single dwelling house and the appurtenant outbuildings being at least two (2) stories in height or an approved type of bungalow to cost not less than three thousand five hundred ($3,500) dollars."

The platters of this subdivision placed the above restrictions in all of their contracts and deeds. It is in defendants' deed to lot 525. The defendants are erecting on their lot what they call an income bungalow, designed for two families. The plaintiffs contend that the structure is forbidden by the restrictions. They filed their bill to enjoin its erection, and obtained a decree in the court below. The defendants have appealed.

The building which the defendants are erecting is on Birwood boulevard. The restrictions forbid the erection on that part of the subdivision of any building except a single dwelling house, at least two stories in height, or an approved type of bungalow. The plaintiffs contend that only buildings designed for single homes can be erected in this subdivision. It is the defendants' contention that the restrictions permit the building of bungalows designed for two families. The question as to whether an approved type of bungalow means a single home or a house for more than one family cannot be determined by a literal interpretation of the language in this restriction. A reading of the entire context leaves some doubt as to whether the use of the property is limited to buildings for single families. We must therefore look to the situation and surrounding circumstances, and endeavor to ascertain the purpose of the platter in imposing the restriction. In *Library Neighborhood Ass'n* v. *Goosen,* 229 Mich. 89, the language of the restriction was indefinite. We said:

"It is to be construed in connection with the surrounding circumstances, which the parties are supposed to have had in mind at the time they made it, the location and character of the entire tract of land, the purpose of the restriction, whether it was for the sole benefit of the grantor or for the benefit of the grantee and subsequent purchasers, and whether it was in pursuance of a general building plan for the development and improvement of the property."

Clemens, Knight, Menard Company assisted the original owner in preparing the restrictions and had active charge in the development of the subdivision. Mr. Menard testified:

"The intent of the restriction was to restrict the occupancy of each lot to a single family; the type of the house being either a two-story house or what is known as an approved type of bungalow. * * * We took this property over to sell in 1916; at that time I had not heard the expression 'income bungalow.' A bungalow is designed to house one family; an income bungalow is not a bungalow; an income bungalow belongs to the two-family flat type, or the duplex type; it is a misnomer."

Mr. Knight testified:

"This entire subdivision of 80 acres was restricted with the idea of having it a single-home section, designed and erected for the occupancy by one family only."

Mr. Krejci, vice president and general manager of the Clemens, Knight, Menard Company, testified:

"Our understanding when we put on these restrictions was absolutely for single homes; it was sold with that understanding.

"Q. That was your agreement with the people that purchased?

"A. Yes, sir, a section of single homes. That is the way I believe we advertised at the time, single homes, nothing else. * * *

"These restrictions were prepared in 1916. At the time these restrictions were prepared I had not heard

the expression 'income bungalow.' We had not heard of an income bungalow and that was not the intent of the restriction; you could build a two-story house or a good bungalow, for a single family, that was the intent of the restrictions."

Mr. Voros, an architect and builder in the city of Detroit, testified:

"A bungalow is a certain type of single type of home.

"*Q.* What is the difference between a bungalow and a single dwelling house?

"*A.* Just the type of the building, the outside appearance.

"*Q.* Where is that difference?

"*A.* Generally makes the roof more flat or sloping roof toward the rear and the front."

It is not necessary to quote further from the testimony. It is very clear that the purpose of the platter in imposing these restrictions was to limit the use of the lots to one-family buildings. That was a part of the general plan for developing the property. And this included bungalows. The language of the restriction is not definite as to the kind of bungalow required, but it is very certain that the parties had in mind a bungalow for one family only. That is the way they interpreted the restriction, and on that interpretation they advertised and sold the lots in the subdivision. It was so understood by all purchasers. They bought their lots and built their homes in reliance on it. Those who testified said that without this consideration they would not have bought. Some of them built bungalows, but in doing so followed the general understanding that a bungalow was a type of single-dwelling house. In fact, all buildings in the subdivision conform to the restriction except the one in question. In view of these facts, the restrictions must be construed as intending to forbid the erection of any but buildings designed for single homes in this subdivision.

The defendants are building a so-called income bungalow which is conceded to be a story and a half two-family dwelling. Such a building is forbidden by the restrictions.

As to the question of laches, there is no merit in the defendants' claim. The testimony shows that the plaintiffs began this action within three days from the time when they discovered that the building was designed for two families. The outward appearance of the structure was that of a single bungalow and affords sufficient excuse for their failure to earlier discover that it was being built for two families.

We have not discussed the alleged necessity of submitting the plans for this bungalow to the selling agent, Clemens, Knight, Menard Company. In our view of the case, that requirement in the restrictions is not here of any importance.

A decree will be entered in this court restraining the defendants from completing the structure according to their present plans, and requiring them to alter it in such a way that it will conform to the restrictions. The plaintiffs will have costs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.