ARDMORE ASSOCIATION *v.* BANKLE.

1. COVENANTS—GENERAL PLAN.
   General plan for building of residences in a subdivision, started
   with a common owner and maintained from its inception
   and understood, accepted, relied on, and acted upon by all
   in interest *held*, a proper interpretation and application of
   express covenant requiring that plans and specifications be
   submitted to grantors and its approval obtained before con-
   struction work began.

2. SAME — BUILDING    RESTRICTIONS — GENERAL    PLAN — ENFORCE-
   ABILITY.
   Building restrictions embodying a general plan of construction
   may be enforced if that plan has been maintained from its
   inception, and if it has been understood, accepted, relied on,
   and acted upon by all in interest.

3. SAME—BUILDING RESTRICTIONS—GENERAL PLAN—PROPERTY.
   Building restrictions, by reason of a general plan, are a valu-
   able property right which complying owners in the subdivi-
   sion can enforce and maintain.

4. SAME—BUILDING RESTRICTIONS—APPROVAL OF PLAN.
   A grantor's reserved power of approval of plans and specifica-
   tions before construction work for buildings shall commence,
   which was included in recorded building restrictions im-
   posed on lots in a subdivision, must be exercised in a fair
   and reasonable manner.

5. SAME—CONSTRUCTION—GENERAL PLAN—APPROVAL OF PLANS AND
   SPECIFICATIONS.
   The type of homes in a subdivision and the intent of the origi-
   nal grantor as indicated by steps taken to establish a general

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 14 Am Jur, Covenants, Conditions and Restrictions, §§ 200,
202.
[2, 3] Omission from deed of restrictive covenant imposed by. gen-
eral plan of subdivision.   4 ALR2d 1364.

plan of construction and character of building were properly considered in construing effect of restriction setting minimum price for houses to be constructed upon lots in subdivision and requiring grantor's approval of plans and specifications before commencement of building.

6. Same—General Plan—Finding of Trial Court—Nonconformance of Proposed Construction.

Trial judge's finding of existence of a general plan of construction of residences on lots in a subdivision to which defendants' proposed construction did not conform *held*, supported by evidence.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 4, 1951. (Docket No. 47, Calendar No. 44,989.) Decided March 1, 1951.

Bill by Ardmore Association, a Michigan corporation, and others against Samuel S. Bankle and wife, individually and as copartners doing business under the name of Samuel S. Bankle Company, to restrain building of houses in violation of general plan. Decree for plaintiffs. Defendants appeal. Affirmed.

*G. Leslie Field,* for plaintiff.

*David M. Miro,* for defendants.

Bushnell, J. This is an appeal by defendants Samuel S. Bankle and Nettie Bankle, individually and as copartners doing business under the name of Samuel S. Bankle Company, hereinafter referred to for brevity as "Bankle." Bankle was permanently enjoined from proceeding with the construction of houses on lots 303 and 304 of Ardmore subdivision, in accordance with proposed plans, on the ground that to do so will violate the building restrictions in the subdivision, because such houses do not conform to the "general plan."

Ardmore subdivision, located north of McNichols road and east of Evergreen road in the city of Detroit, consists of 212 residential lots on 4 streets running north from McNichols. Three of these streets are 60 feet wide, one is 80 feet wide, and the lots generally have a 40-foot frontage. There are no alleys in the rear, but a public-utility easement is provided. Those lots facing on McNichols road may be used for business purposes.

The subdivision was platted in 1926 by Louis G. Palmer & Company, and at the time of trial was about 80 per cent. improved by "high-class" residential property. Palmer provided the original lot purchasers with a certificate which purported to guarantee "a building program of sufficient magnitude to establish the character of building for the entire subdivision."

The trial judge ruled that this certificate was of no contractual binding force upon Bankle but was admitted in evidence only to show the scope of a proposed general plan and the initial steps taken by the subdivider to effectuate such a plan. The first 7 or 8 homes, all of similar character, were built by Palmer.

Plaintiff Ardmore Association is a nonprofit corporation composed of property owners in this subdivision. Individual owners, numbering 111, are joined as parties plaintiff. The great majority of the homes are 2-story, 6-room colonial type structures, a few are 1½ story, and there are 2 ranch type homes. The present average value, excluding land, is claimed to be "upwards of $15,000."

The restrictions of record read in part as follows:

"Nothing but a single private dwelling or residence designed for the occupancy of one family, shall be erected on any lot in this subdivision, nor shall said premises be used for any purpose other than residential purposes, except as herein provided.

"All such residence buildings shall cost not less than $6,500, and the plans and specifications for same shall be submitted to the grantors herein and its approval obtained, before construction work for said buildings shall commence."

The houses which Bankle proposes to erect and which are claimed to be in violation of the restrictions are one-story and a half with 2 bedrooms on the ground floor and unfinished space in the attic which could be converted into 2 more bedrooms. One of the houses would contain 903 square feet on the first floor and 250 square feet of usable space on the second; the other, with the same square footage on the ground floor, would have 240 usable square feet on the second floor. The estimated cost is $10,800 and $10,400 respectively. There is testimony to indicate that it would cost at the time of trial about $11,800 to duplicate a house costing about $6,500 in 1926 and 1927.

Appellants raise 3 questions, (1) whether general-plan restrictions can exist in the face of "unambiguous asserted written restrictions;" (2) the absence of proof of a general plan; and (3) assuming the existence of such a plan, do the proposed buildings violate that plan?

The trial judge held that the houses which Bankle proposes to erect "differ radically from any other houses in the subdivision." He stated that if the specific restrictions had said no more than that all residential buildings should cost not less than $6,500, plaintiffs would have no ground for equitable relief, and that there was no basis for holding in the absence of specific language that the restriction meant "$6,500 in 1926, or its equivalent in construction cost at a later date." But, said the trial judge:

"The restriction does not stop there. It goes on to provide that plans and specifications for proposed

residences shall be submitted to the grantors for approval before building starts. The obvious objective of this provision was to give the grantors an opportunity to assure themselves that any buildings proposed should conform in general style and plan to the 7 or 8 residences built by the subdivider, and to others erected by lot purchasers. It is true that the certificate given to lot purchasers by the subdivider does not give rise to a restriction and has no contractual binding force upon the defendants. It is pertinent, however, in indicating the intention to adopt and follow a given plan, and to that end the requirement that plans and specifications must be approved before construction is effective. The court can no more ignore this provision in the specifications than it can enlarge the $6,500 provision. It was incorporated in the original plat and in subsequent conveyances from the common grantor for a specific purpose, and that purpose should not be subverted either by the defendants or by the court."

We agree with the view expressed by the trial judge that:

"This case does not involve a self-imposed plan to which the defendants were not parties (as condemned in *Hart* v. *Kuhlman,* 298 Mich 265). It demonstrates a general plan starting with a common owner and maintained from its inception and understood, accepted, relied on and acted upon by all in interest. The case does not involve a restrictive covenant resting in parol and not of record. The issue calls for the interpretation and application of an express covenant which clearly indicates an intention to fix a minimal standard of building in the entire subdivision and to maintain permanently a common plan visually exemplified by the houses built by the original subdivider and the other houses built by lot owners thereafter."

In a supplemental opinion the trial judge indicated the propriety of defining as nearly as possible the

general plan established by the testimony, which he found:

"Contemplates (a) full two-story houses with total finished liveable area of not less than 1375 square feet, or (b) one and one-half story houses with total finished liveable area of not less than 1350 square feet, or (c) either one-story or ranch type houses on not less than one and one-half lots with total finished area of not less than 1050 square feet. In the case of one-story houses they shall not be less than 33 feet of frontage on the street."

Building restrictions embodying a general plan of construction may be enforced if that plan has been maintained from its inception, and if it has been understood, accepted, relied on, and acted upon by all in interest. Such restrictions are "binding and enforceable on all *inter se.*" *Allen* v. *City of Detroit*, 167 Mich 464, 469 (36 LRA NS 890).

Building restrictions, by reason of a general plan, are a valuable property right which complying owners in the subdivision can enforce and maintain. *Indian Village Association* v. *Barton*, 312 Mich 541. See, also, authorities cited at page 549.

In this case the building restrictions of record require the approval of plans and specifications "before construction work for said buildings shall commence." The power to approve must be exercised in a fair and reasonable manner. *West Bloomfield Company* v. *Haddock*, 326 Mich 601.

In construing the effect of such a restriction the trial judge properly took into consideration the type of homes in the subdivision and the intent of the original grantor as indicated by the steps taken to establish a general plan of construction and character of building. *Library Neighborhood Association* v. *Goosen*, 229 Mich 89; and *Bunce* v. *Jones*, 238 Mich 337. See, also, *Murdock* v. *Babcock*, 329 Mich 127.

The trial judge's finding of the existence of a general plan of construction is supported by proof of the necessary elements thereof, and we agree with his finding that the proposed construction does not conform to such general plan.

The decree is affirmed, with costs to appellees.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred.