## SMITH v. FIRST UNITED PRESBYTERIAN CHURCH.

1. COVENANTS—RESTRICTIONS—CHURCHES—RESIDENCES.

    A church is not a nuisance *per se,* so far as covenants restricting use of property to residences is concerned.

2. SAME—RESTRICTIONS—CHURCHES—RESIDENCES.

    The building of a church would violate a covenant restricting use of land to residential purposes and where there has not been such a change in the neighborhood as to destroy the restriction so that it does remain of value to the plaintiffs, they may bring suit to enforce it against subsequent purchaser intending to build a church.

3. SAME—SUBDIVISIONS—INTENT—RESTRICTIONS—RESIDENCES.

    Fact that 2 brothers inherited adjoining tracts of land and subdivided them, that 1 of them restricted use of lots in his subdivision to single private dwellings and that plats for the 2 subdivisions came from the same law offices would not indicate that both intended their subdivisions to have the same restrictions.

4. SAME—CHURCHES.

    Covenants not restricting properties to residences or dwellings may generally be regarded as permitting the use of the restricted property for church purposes.

---

* Continued from Volume 332.

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 9, 11] Construction and application of covenant restricting use of property to "residence" or "residential purposes". 175 ALR 1191.

Church as violation of covenant restricting use of property. 13 ALR2d 1239.

[2, 4] 14 Am Jur, Covenants, Conditions and Restrictions § 225.

[2, 13] Building restrictions, by covenant or condition in deed or by zoning regulation, as applied to religious groups. 148 ALR 367.

[5–7] 14 Am Jur, Covenants, Conditions and Restrictions § 210 *et seq.*

[8] 14 Am Jur, Covenants, Conditions and Restrictions § 331.

[10, 11] 14 Am Jur, Covenants, Conditions and Restrictions § 326 *et seq.*

[10, 11] Omission from deed of restrictive covenant imposed by general plan of subdivision. 4 ALR2d 1364.

[12] 14 Am Jur, Covenants, Conditions and Restrictions § 206.

5. SAME—INTENT OF SUBDIVIDER.

A poorly worded restrictive covenant is open to construction to ascertain the intent of the subdivider.

6. SAME—RESTRICTIONS—AMBIGUITY—GENERAL PLAN.

Ambiguous restrictive covenants for the use of land may be interpreted in the light of a general plan of the subdivider.

7. SAME—CONSTRUCTION OF RESTRICTIONS.

Cases involving the construction of building restrictions must stand on their own facts.

8. SAME—RESTRICTIONS—RECORDING.

Purchasers of land are bound by restrictions of record prior to their purchase.

9. SAME—RESTRICTIONS—RESIDENCES—GENERAL PLAN.

Restriction in recorded deed to land purchased by defendants and upon which they proposed to erect a church, whereby purchaser agreed that "no residence shall be built nearer than 25 feet from the * * * line" and "that no barn, cesspool or out buildings of any kind shall be built or permitted to remain on the lands nearer than 90 feet from the * * * line" is an affirmative covenant and is construed as restricting use of land to residences, where, during period of nearly 40 years a single residence building plan, except as to lots on business thoroughfares, was adopted, understood and acted upon by all parties concerned.

10. SAME—GENERAL PLAN.

A general plan as to development of a subdivision which has been maintained from inception of subdivision, that has been understood, accepted, relied on, and acted upon by all in interest, is binding and enforceable on all *inter se*, goes with the land and is equally binding on all purchasers with notice.

11. SAME—RESTRICTIONS—NOTICE—RECORDING—DEEDS.

In a suit to restrain defendants from erecting a church on lots in a subdivision, claimed by plaintiffs to be restricted to single residences, where defendants had actual notice of said claimed restrictions they could not rely on the fact that the recorded plat contained no such restrictions and that the language of their deed was insufficient to give them notice of such restrictions.

12. SAME—PUBLIC POLICY—RESTRICTIONS—RESTRAINTS ON ALIENA-
TION.
 Generally, restraints on the alienation of property are not
 favored, but restrictions for residence purposes, if clearly
 established, are favored by definite public policy.

13. RELIGIOUS SOCIETIES—REAL PROPERTY.
 A church, as an owner of real estate, stands equally before the
 law with all others who invoke its protection.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 15, 1952. (Docket No. 52, Calendar No. 45,270.) Decided April 7, 1952.

Bill by Milton B. Smith and others against First United Presbyterian Church and others to restrain building of church. Decree for plaintiffs. Defendants appeal. Affirmed.

*Edward B. Benscoe,* for plaintiffs.

*Alexander, Cholette, Buchanan, Perkins & Conklin,* for defendants.

*Amicus Curiae:*
*Howard C. Baldwin* and *Frank H. Boos* (*Baldwin & Boos,* of counsel), for Detroit Council of Churches.

BUTZEL, J. In 1913 Edward J. Minock, now deceased, recorded a plat of Edward J. Minock's subdivision of the west ½ of the southwest ¼ of section 14 in Redford township, 1 S, R 10 E, Wayne county, Michigan (now in the city of Detroit). The subdivision was bounded on the north by Grand River avenue, on the south by 12th street (now Fenkell avenue), on the west by Evergreen road, and on the east by the property of others. It contains 62 lots, 11 of which have a frontage varying from 50 to 60 feet on Grand River avenue, and 51 lots of over an

acre each are south of the Grand River lots and fronting on streets that traversed the subdivision.

Lot 53 and lot 54 adjoining it are situated at the southeast corner of Minock and Midland avenue (formerly Emmett avenue). Eighty-three feet or thereabouts were later taken off the east end of these 2 lots to become part of the Outer Drive, a very fine thoroughfare 150 feet in width running through the city of Detroit near its outside boundaries. As a result, lots 53 and 54 also front on Outer Drive. The lots still have a depth of approximately 200 feet and a width of 82 and 132 feet respectively. Some of the other lots in the subdivision were divided into smaller residential lots.

The plat itself contains no restrictions. In all the deeds to the lots given by the subdivider, with very few exceptions, the following restriction was incorporated:

"As a part of the consideration of this deed, it is agreed between the parties hereto that no residence shall be built nearer than 25 feet from the * * * line of the above described lands and shall cost not less than $1,200 and that no barn, cess pool or out buildings of any kind or description shall be built or permitted to remain on said lands nearer than 90 feet from the * * * line of the said described lands," the deeds making reference to the front line of each lot, as same appeared to be either the easterly or the westerly line of each of the lots conveyed.

In 1913 Amos and Denise Gramlich bought these 2 lots subject to this restriction and deeded the west half of lot 53 to plaintiffs Monticelli subject to restrictions of record. Defendants, First United Presbyterian Church and its agents, knew of the restriction in the Gramlich deeds when they purchased the easterly half of lot 53 and all of lot 54 which together we shall refer to as the proposed church site, but Mrs. Gramlich, survivor of herself and hus-

band, left out the restrictive covenant in deeding to the church. The Monticellis and other property owners brought suit to enjoin the church, its minister and other defendants herein from building a church on the proposed site. After a hearing, plaintiffs were awarded a decree restraining such construction, and defendants appeal.

The lots on Grand River avenue and Fenkell avenue are improved with stores and gas stations and are used for nonresidential purposes; otherwise, the other lots have been used exclusively for residential purposes. Very substantial single residences have been built on them with the exception that in the block between Grand River avenue and Midland avenue (and not in the block where the proposed church site is situated), 1 large and 1 small apartment building have been erected. Plaintiffs Monticelli have a substantial residence which cost them over $13,000. Plaintiffs Smith own a home on lot 55 adjoining the south side of the proposed church site. There has not been such a change in the neighborhood as to destroy the restriction for residential purposes, assuming that such exists as plaintiffs claim, on all the lots on the side streets. We further find that a residential restriction would still be of benefit to plaintiffs, who may bring suit to enforce it. See *Stewart* v. *Stark,* 181 Mich 408; *Swan* v. *Mitshkun,* 207 Mich 70; *Putnam* v. *Ernst,* 232 Mich 682; *Sullivan* v. *Playfair Realty Co.,* 238 Mich 274; *Voorheis* v. *Powell,* 261 Mich 378 (85 ALR 932); *Indian Village Association* v. *Barton,* 312 Mich 541.

To simplify the issues in this suit, we hold that a church is not a nuisance *per se.* Plaintiffs disavow any such claim. They do assert that the church would destroy the residential character of their homes, attract large crowds, create parking problems, noises and interfere with their privacy, et cetera. The trial court properly took testimony to

determine whether the enforcement of the restriction would be of value to plaintiffs.

The church is to be built in 3 units. The walls of one of them would be built along 2 sides of the Monticellis' property and also along 1 side of the Smith property.

The building of a church would violate a covenant either express or by reason of a reciprocal negative easement forbidding any building except for residential purposes, assuming such to exist here. In *Voorheis* v. *Powell, supra,* we quoted from *Evangelical Lutheran Church of the Ascension* v. *Sahlem,* 254 NY 161 (172 NE 455), as follows:

"Here, in the case at hand, no process of balancing the equities can make the plaintiff's the greater when compared with the defendant's, or even place the 2 in equipoise. The defendant, the owner, has done nothing but insist upon adherence to a covenant which is now as valid and binding as at the hour of its making. His neighbors are willing to modify the restriction and forego a portion of their rights. He refuses to go with them. Rightly or wrongly he believes that the comfort of his dwelling will be imperiled by the change, and so he chooses to abide by the covenant as framed. The choice is for him only. Neither at law nor in equity is it written that a license has been granted to religious corporations, by reason of the high purpose of their being, to set covenants at naught. Indeed, if in such matters there can be degrees of obligation, one would suppose that a more sensitive adherence to the demands of plighted faith might be expected of them than would be looked for of the world at large. Other owners may consent. One owner, the defendant, satisfied with the existing state of things, refuses to disturb it. He will be protected in his refusal by all the power of the law."

Also, see *Boston-Edison Association* v. *Temple of Light,* 310 Mich 48.

Daniel Minock and Edward Minock, his brother, both inherited property from their father. Daniel inherited the parcel adjoining Edward's. It is now known as the Evergreen Subdivision. Daniel in subdividing his parcel in 1916 restricted the lots, except those on Grand River avenue, to single private dwellings. The plats for the 2 subdivisions came from the same law offices. In the opinion of the trial court, some stress was placed on this circumstance, and it was argued that both brothers must have intended the same restriction. This does not follow. It is *non sequitur.*

In view of our decision we need not consider whether the building of the church in the manner proposed will violate the zoning laws or building regulations of the city of Detroit. Defendants state that they will be bound by them and will conform with them if they are permitted to build the church.

It has also been generally true that covenants not restricting properties to residence or dwellings may be regarded as permitting the use of the restricted property for church purposes. *Roberts* v. *Congregation Shaarey Zedek,* 242 Mich 381; *Kelly* v. *Carpenter,* 245 Mich 406; 13 ALR2d 1242. Defendants relied heavily upon the *Roberts* and *Kelly Cases* in their arguments. They ignored the fact, however, that the restrictions in those cases pertained to "buildings" and could not be interpreted to mean "residences," particularly in view of the fact that no uniform residential area had developed. These cases, therefore, are in no way controlling here.

The restrictive covenant itself does not expressly forbid any particular kind of use of the property, only sets out requirements for the erection of residences should they be built. Does this affirmative requirement amount, in effect, to a negative requirement that none other than residences be built? As the restriction is poorly worded, it is open to con-

struction to ascertain the intent of the subdivider; in this case, more particularly, whether or not he had a general plan of restriction for the subdivision which involved its restriction to single residential use only. To the effect that ambiguous restrictions may be interpreted in the light of a general plan, see *Library Neighborhood Association* v. *Goosen,* 229 Mich 89; *Signaigo* v. *Begun,* 234 Mich 246; *Bunce* v. *Jones,* 238 Mich 337; *Holderness* v. *Central States Finance Corp.,* 241 Mich 604; *Brown* v. *Hojnacki,* 270 Mich 557 (97 ALR 621); *West Bloomfield Co.* v. *Haddock,* 326 Mich 601; *Ardmore Association* v. *Bankle,* 329 Mich 573.

It will serve no useful purpose to review all of the many building restriction cases which have come before this Court. No two are alike and, in the main, must stand on their own facts. No hard and fast rules appear for our guidance. *Putnam* v. *Ernst, supra; Hamburger* v. *Kramp,* 268 Mich 611.

Counsel have discussed a number of cases in which we had to determine the nature of a general building plan, but in which there was no question as to the import of the restriction involved, only the problem as to whether the general plan of restriction was binding on property not burdened with restrictions of record by reason of a reciprocal negative easement. Of such nature are: *Allen* v. *City of Detroit,* 167 Mich 464 (36 LRA NS 890); *McQuade* v. *Wilcox,* 215 Mich 302 (16 ALR 997); *French* v. *White Star Refining Co.,* 229 Mich 474; *Sanborn* v. *McLean,* 233 Mich 227 (60 ALR 1212); *Morris* v. *Levin,* 236 Mich 490; *Sullivan* v. *Playfair Realty Co., supra; Kiskadden* v. *Berman,* 244 Mich 473; *Indian Village Association* v. *Barton, supra; Zelinski* v. *Becker,* 318 Mich 209. Those cases pose an entirely different problem than the instant one. Defendants herein admit they are bound by restrictions of record and our problem is whether or not such restric-

tions, as above set forth, are to be interpreted in the light of a general plan as restricting the Edward J. Minock Subdivision to residence purposes only except on business streets.

The covenant in question is affirmative and not negative. We find no case involving an identical covenant. Very similar, however, was the covenant in *Library Neighborhood Association* v. *Goosen, supra,* to the effect that, "it is a condition of this conveyance that the second party * * * shall erect a * * * good * * * single dwelling." In express terms, there was no negative promise, only an affirmative requirement. This Court there held that it was proper to consider the circumstances surrounding the covenant in order to determine the intent of the grantor. All the other lots in the subdivision were subject to the same restriction. A single residence building plan was adopted, understood and acted upon by all parties in interest, with the result that the neighborhood consisted at the time of trial of high-class single residence property. The restriction was maintained throughout a long period by such parties. We held that an attempt to build other than a single residence could properly be enjoined. It is unnecessary to point out the many analogies between the *Library Neighborhood Case* and the instant one. We believe it is very persuasive here.

For other cases in which restrictive covenants have been interpreted in the light of a plan generally observed, in a manner so as to make them more restrictive, see *Signaigo* v. *Begun, supra; Bunce* v. *Jones, supra; Holderness* v. *Central States Finance Corp., supra; Brown* v. *Hojnacki, supra.* In each of these cases the result was to uphold a strictly residential character of a neighborhood, subdivision or plat.

We have also examined another group of cases in which a general plan was held not to exist. *Kime* v. *Dunitz*, 249 Mich 588; *In re Nordwood Estates Subdivision*, 291 Mich 563; *Denhardt* v. *De Roo*, 295 Mich 223; and *Kathan* v. *Stevenson*, 307 Mich 485, all involve situations where it was sought to prove an implied restriction but we did not allow such proof as there was no showing that a general plan, if such existed, had been uniformly complied with. And in *Casterton* v. *Plotkin*, 188 Mich 333, we denied relief as the defendant had taken title to his property prior to the inception of the general plan. In none of these cases was there a fact situation similar to that in the instant case.

We believe that adequate showing has been made here of the existence of a general plan to restrict the Edward J. Minock Subdivision to single residence purposes and that under the law of Michigan such plan will be enforced by this Court. It is true that it is difficult to ascertain with exactitude the intent of the subdivider, Edward J. Minock, in 1913, when he sold to Mr. and Mrs. Gramlich. There is no showing of his intent through any representations he might have made. The trial court properly noted, however, that the size of the lots set out indicates he did not intend the property for business purposes, the usual frontage for business lots in Detroit having been 20 feet. We can also infer that the subdivider did not contemplate that a building other than a residence would be erected, as there is no mention of the word "building" or "business" in his restrictions. This of itself does not absolutely indicate an intent to so restrict the property.

The classic statement so frequently quoted of the development of a general plan is found in *Allen* v. *City of Detroit, supra,* p 469:

"If the general plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se.* It goes with the land, and is equally binding on all purchasers with notice."

See *Ardmore Association* v. *Bankle, supra.* Those requirements are met in the instant situation. The fact that single residences only exist in the disputed area is one of the best indications that the subdivider intended to so restrict it. Although divided into smaller lots, the property was maintained as residential. The testimony is undisputed that the purchasers of lots in the area built single residences in conformance with what they believed to be a general plan and scheme. The residential plan was maintained from the time of its inception, when the subdivision was platted until Mrs. Gramlich, as survivor of herself and husband, deeded to the church. She was vigilant in maintaining the single-residential character of the property and thus acquiesced in the general plan to so maintain the subdivision and waived any right she or her grantees would have to act outside of it.

It is undisputed that defendants were given notice by plaintiffs that the properties were restricted to single residential purposes. In *Library Neighborhood Association* v. *Goosen, supra,* we held (quoting syllabus):

"In a suit to restrain defendant from erecting an apartment house on lots in a district claimed by plaintiff to be restricted to single residences, where defendant had actual notice of said claimed restrictions he could not rely on the fact that the recorded plat contained no such restrictions, and that the language of his deed was insufficient to give him notice of such restrictions."

In *Signaigo* v. *Begun, supra,* we said at page 250:

"The oral testimony fortified by numerous photographs presents a situation that could scarcely be overlooked by a most casual observer, and in addition to this there is positive testimony that defendant was informed before he purchased the lot that the street was restricted to 'single residences only' * * * defendant [was] given actual notice."

The same elements of notice are present in the instant case as were present in the above 2 cases.

It was shown at the hearing that the residential character of the neighborhood would be less pronounced if defendants were allowed to build. Although the law does not favor restraints on the alienation of property in general, restrictions for residence purposes, if clearly established, are favored by definite public policy. *Johnstone* v. *Detroit, G. H. & M. R. Co.,* 245 Mich 65 (67 ALR 373); *Wood* v. *Blancke,* 304 Mich 283. We are mindful of the highly favored place a church should have in the community. As an owner of real estate, however, the church stands equally before the law with all others who invoke its protection. Plaintiffs herein are entitled to the protection of the residential restriction for which they bargained when they built their homes. We, therefore, find no equities which dictate that the restriction should not be enforced in this instance.

The decree in favor of plaintiffs is affirmed, with costs.

North, C. J., and Dethmers, Carr, Bushnell, Sharpe, and Reid, JJ., concurred with Butzel, J.

Boyles, J., concurred in the result.