WELLS ET AL *v.* OSBORNE ET AL.

[No. 124, October Term, 1953.]

*Decided April 27, 1954.*

*Petition for modification of opinion, filed May 18, 1954, denied May 18, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edwin H. Miller* and *Leo H. Miller*, with whom were *Miller and Miller*, on the brief, for appellants.

*Francis H. Urner*, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order dismissing a petition to restrain the appellee from violating the terms of an injunction contained in a decree passed on February 7, 1951, and to have him adjudged in contempt. The case originated in 1950, when, after hearing upon the original bill, an injunction was issued restraining Dr. Osborne from practicing his profession of chiropractor at his residence, No. 1172 of The Terrace, in Hagerstown. Upon appeal to this Court the decree was reversed for reasons stated and the case remanded for the passage of a less sweeping decree. *Osborne v. Talbot*, 197 Md. 105. On remand, the decree of February 7, 1951, was passed

continuing the prior injunction "except as modified by the opinion of the Court of Appeals." In passing the order now appealed from, the Chancellor found that the appellee's conduct, as developed at the hearing, did not amount to a violation of that decree.

Since our previous opinion laid down the law of the case on which the decree of February 7, 1951, was based, it is necessary to consider the exact scope of the holding. We sustained the validity of the restrictive covenant, contained in a deed of October 25, 1910, that the premises should be "occupied and used for residence purposes only and not otherwise." We held that the injunction in the decree appealed from was too broad, because it "in effect refused to recognize any distinction between practice of a profession wholly at or from one's residence and 'incidental' practice to a limited extent in special circumstances." *Osborne v. Talbot, supra,* p. 110. On the record before us, we held that the limited, incidental use of his residence as there proposed, would not be a violation of the covenant. At that time Dr. Osborne was regularly practicing his profession at his office on Broadway, and in his answer to the bill averred that the use of his residence was only incidental and supplemental, "beyond usual office hours, to his regular office which is maintained in another location." However, in his testimony he "in effect declined to confine his intentions for the future within the scope of his answer. He admitted he had expressed a desire to save office rent in the future, 'as time might crawl up' on him and he might conduct a smaller practice entirely at his residence." *Osborne v. Talbot, supra,* p. 110.

In regard to this threatened action we left the matter open. We said (p. 118) : "If defendant should abandon his present office and remove it to his residence, there is not sufficient evidence, as to how the present office is conducted, to enable us to determine whether or not such an office at the residence would violate the covenants. Our decision will be without prejudice to further proceedings in this case or a new case, if and when

such a change is made or threatened and plaintiffs are in a position to show the material facts."

It is undisputed that on or about July 6, 1953, the defendant closed his Broadway office and began practicing his profession actively and exclusively at his residence. He has no other office and no other vocation. He makes his living from his practice. He has office hours five days a week, and two evenings in a week. He employs the same nurse he employed in his office. He has two telephones and two different numbers in his residence, one of which is the same business number that he had in his office. Appointments are usually made by telephone. His electrical equipment includes: "one infra red, one teca unit, one ultra sonics, one oscillo clast, two ultra violet lamps, one magniflex, one anatometer, one electromae." He had more equipment in his Broadway office. The treatment room contains four booths. He has a small sign outside, "Doctor's Office," with an arrow pointing to it. There was testimony that during one day, over a period of seven hours, seventeen automobiles, presumably carrying patients, stopped at his residence. Another witness testified that an average of from five to seven cars an hour stopped there. On July 10, 1953, he treated twenty-seven patients. This compares with thirty-five, the largest number of patients treated at the Broadway office in any one day during January and February, 1953.

We think these activities overstep the bounds and violate the covenant. While there is evidence that the practice is not as large as at the Broadway office, and that office hours are not as long, it cannot be described as incidental in any sense. It is the primary and exclusive use to which his training and talents are applied. Nor is it incidental in the sense of occasional, as in the case of a retired physician accepting calls from a few patients, or an active practitioner acting out of usual office hours in urgent or emergency cases. Although a chiropractor is not a physician, there is a close analogy, as noted in our previous decision. But we said: "If

the practice of medicine is not prohibited, it does not follow that any and all practice is permitted." (p. 117) "As usual, the line can only be drawn case by case." (p. 118) It is quite immaterial that some of the neighbors do not object. (p. 111)

The question left open in our previous decision must be answered contrary to the appellee's contention and the views expressed by the Chancellor. However, since the question was left open and the terms of the injunction were not so specific that the actions of the appellee ought to be attributed to bad faith, we think he should not now be held in contempt. We suggest that the decree should be modified to enjoin the defendant from the regular use of the premises for the practice of his profession, except as incidental or supplemental to an office elsewhere, or occasionally or in emergencies. His present activities must be discontinued.

*Decree reversed, with costs, and case remanded for the passage of a decree in conformity with this opinion.*